# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

MEGAN ROSE RUIZ, *et al.*,

        Plaintiffs,

    v.

RINGLING COLLEGE OF ART AND
DESIGN, INC.,

        Defendant.

Case No. _____

## DEFENDANT'S NOTICE OF AND PETITION FOR REMOVAL

Defendant, Ringling College of Art and Design, Inc. ("Defendant" or "Ringling"), by and through its undersigned counsel and pursuant to 28 U.S.C. §§ 1331, 1332, 1343, 1367, 1441, and 1446, files its Notice of and Petition for Removal (the "Notice") to remove this action filed by Plaintiffs Megan Rose Ruiz, Lyra Wilson, Lauren Wilson, Caitlin Henning, Roxeanne Zinsser, Dylan Bonner, Nickolas Berger, and Bryan Paul Patterson (collectively, "Plaintiffs") from the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida to the United States District Court for the Middle District of Florida, Tampa Division.

## INTRODUCTION

The removal of this action is based upon both federal question jurisdiction and diversity jurisdiction.

**Federal Question Jurisdiction**

As will be discussed in more detail below, federal question jurisdiction exists because, while their claims are ostensibly *styled* as negligence-type claims, Plaintiffs have explicitly and repeatedly predicated their claims on alleged violations of various federal anti-discrimination and related laws and have also sought remedies (such as attorneys' fees and wage-related damages) available only under such federal statutes and not under the common law (the ostensible basis on which their claims are brought). Notably, Plaintiffs' allegations also implicate the elements and burdens of proof for claims arising under Title IX, not the common law, such as repeated allegations regarding Ringling's alleged "deliberate indifference" towards the supposed discrimination to which they were subjected. This standard of proof is used in the Eleventh Circuit specifically for Title IX claims and is actually contrary to the established burden of proof for negligence claims. It is, therefore, unquestionable that Plaintiffs' claims are in fact federal claims masquerading as state law claims for negligence. Because federal question jurisdiction looks to the substance, not form, of the claims at issue, this Court has jurisdiction under 28 U.S.C. § 1331.

**Diversity Jurisdiction**

This Court also has diversity jurisdiction. Ringling does not dispute that two of the eight Plaintiffs claim to be Florida citizens. It is clear, however, from Plaintiffs' own allegations that other than the fact that Ringling employed Shaffer

between 2008 and 2021, the claims of the eight Plaintiffs have nothing to do with one another: they allege different forms of discrimination and other misconduct (one Plaintiff alleges discrimination based on sexual orientation; another bases their claim on disability discrimination in employment for failing to provide reasonable accommodations; one alleges gender discrimination for failing to take action based on a student-on-student sexual assault; another alleges retaliation by Ringling when they tried to complain, etc.).  These events also admittedly occurred, in some instances, more than a decade apart (2008, 2009, 2013, 2016, 2018, 2019 and 2020), involved completely different students (in terms of both offenders and victims) and Ringling staff (Plaintiffs admit staff other than Shaffer were involved in many incidents, not all of whom were similar in each Plaintiff's alleged incident).

Indeed, a number of the Plaintiffs were not even students or employees of Ringling when the alleged events involving others occurred (in some cases, they had not been at Ringling for a decade), and they do not allege that any Plaintiff has any firsthand knowledge of another Plaintiff's claim. In simple terms, none of the Plaintiffs' claims arise out of the same facts, events, transactions, or occurrences. Based on the allegations as set forth in the Complaint, the claims were intentionally misjoined to avoid removal. The law, however, does not permit such an amalgamation of parties solely to avoid diversity. Looking past the improper misjoinder of parties (an issue to be further addressed in Ringling's forthcoming

3

Motion to Dismiss), Ringling is clearly diverse with the remaining Plaintiffs and this Court accordingly has jurisdiction under 28 U.S.C. § 1332.

Ringling will now more fully address each aspect of the removal analysis.

## I. DEFENDANT SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL

1.      On June 21, 2022, Plaintiffs filed a Complaint in the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida, captioned *Ruiz et. al v. Ringling College of Art and Design, Inc.,* (the "Circuit Court Case"). The Circuit Court Case was assigned case number 2022 CA 002883 NC.

2.      In the Complaint, Plaintiffs allege the following claims:

| Count Number | Claim | Plaintiffs Bringing Claim |
|---|---|---|
| I | Constructive Fraud | Lyra Wilson, Roxeanne Zinsser, Dylan Bonner, Bryan Paul Patterson, Nickolas Berger |
| II | Constructive Fraud | Caitlin Henning |
| III | Negligent Supervision and Retention | Megan Rose Ruiz |
| IV | Negligent Supervision and Retention | Lyra Wilson, Roxeanne Zinsser, Dylan Bonner, Bryan Paul Patterson |
| V | Negligent Supervision and Retention | Caitlin Henning |
| VI | Negligent Supervision and Retention | Lauren Wilson |
| VII | Negligent Supervision and Retention | Nickolas Berger |
| VIII | Breach of Implied Contract | Lyra Wilson, Caitlin Henning, Lauren Wilson, Roxeanne |

| | | Zinsser, Dylan Bonner, Bryan Paul Patterson, Nickolas Berger |
|---|---|---|
| IX | Breach of Fiduciary Duty | Lyra Wilson, Caitlin Henning, Lauren Wilson, Roxeanne Zinsser, Bryan Paul Patterson, Nickolas Berger |

3.     Plaintiffs effected service of process on Defendant on June 28, 2022. Therefore, this Notice has been filed within 30 days after service upon Defendant of the pleading setting forth the claims for relief upon which this removal is based as required by 28 U.S.C. § 1446(b).

4.     Copies of all process, pleadings, and orders of every kind served upon Defendant are attached to this Notice as **Exhibit A** as required by 28 U.S.C. § 1446(a) and Local Rule 1.06(b).

5.     Pursuant to 28 U.S.C. § 1446(d), Defendant has provided written notice of the removal to all adverse parties in this action and will be contemporaneously filing a copy of this Notice in the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida.

6.     As discussed more fully below, and as outlined above, the district courts of the United States have original jurisdiction over this matter because it arises under the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 1331.

7.     The district courts of the United States also have original jurisdiction over this matter because it involves a controversy between citizens of different states

5

and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a).

8. The United States District Court for the Middle District of Florida, Tampa Division, includes the judicial county in which Plaintiffs filed their Complaint. Thus, removal to this Court is proper. *See* 28 U.S.C. § 1441(a).

## II. REMOVAL IS PROPER BASED ON FEDERAL QUESTION JURISDICTION

### A. The Court Has Federal Question Jurisdiction

9. Federal district courts have original jurisdiction of all civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Regardless of whether the Complaint is construed under the well-pleaded complaint rule or under the artful pleading doctrine, this action is one over which this Court has original jurisdiction.

10. The nature of a cause of action determines jurisdiction. *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199-201 (1921). Though artfully labeled as claims of "constructive fraud," "negligent supervision and retention," "breach of implied contract," and "breach of fiduciary duty," Plaintiffs cannot avoid removal to federal court by intentionally omitting to plead necessary federal questions. *Id.; Franchise Tax Bd. of California v. Construction Laborers Vacation Trust*, 463 U.S. 1, 22 (1983) ("a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint."); *Grable & Sons Metal Products, Inc. v. Darue*

6

*Engineering & Manufacturing*, 545 U.S. 308, 310 (2005) (holding that federal question jurisdiction exists when a "state-law claim necessarily raises a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."). Despite Plaintiffs' obvious efforts to try and artfully frame their claims under Florida state law, removal to this federal district court remains proper because the alleged claims necessarily and substantially involve and require resolution of disputed questions of federal law.

11.    Although Plaintiffs' claims must ultimately be dismissed for reasons to be discussed in Defendant's forthcoming motion to dismiss, this Court has jurisdiction because Plaintiffs bring claims arising under, and/or raising substantial issues and questions relating to: Title I and Title III of the Americans with Disabilities Act of 1990 and the ADA Amendments Act of 2008, 42 U.S.C. § 1201 *et seq.* ("ADA/ADAAA"); Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681, *et seq.* ("Title IX"); the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act, 20 U.S.C. § 1092(f) ("Clery Act"); Violence Against Women Act of 1994, 34 U.S.C §§ 12291-12514 ("VAWA"); the Family Education Rights and Privacy Act of 1974, 20 U.S.C. § 1232g ("FERPA"); and the Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d ("HIPAA") (collectively, the "Federal Laws").

12.     This Court also has subject matter jurisdiction under the United States Constitution and pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over: (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom, or usage, of any right, privilege, or immunity secured by the Constitution of the United States, or by any Act of Congress providing for equal rights of citizens or all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights.

13.     While all of Plaintiffs' artfully pleaded claims arise under federal law and provide grounds for removal based on federal question jurisdiction, because at least one (1) claim invokes a federal question, removal of the entire case is proper. 28 U.S.C. § 1367(a); 28 U.S.C. § 1441(c).

**B.     Federal Question Jurisdiction Exists Under The ADA**

14.     This action is removable because Counts V, VI, and VII, and the "constructive fraud" claim in Count II of the Complaint directly allege claims, and otherwise raise necessary federal questions, arising under and pertaining to both Title I and Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* (the "ADA"). *See e.g.*, Compl. at ¶¶ 110-134, 203-208, 228-237, 240-

8

248, 250-259.[1] Accordingly, Count II and Counts V through VII of the Complaint are within this Court's original jurisdiction. *See Smith*, 255 U.S. 180 at 199.

15.    To be clear, even though Counts II and V through VII also cite to the Florida Civil Rights Act, Florida Statutes §§ 760.01, *et seq.* (the "FCRA"), and/or Florida Statute § 509.092, these citations are inconsequential to finding jurisdiction under § 1331. First, by seeking to avoid this Court's jurisdiction by omitting facts and express claims under federal law for disability discrimination, Plaintiffs have also not alleged an express claim under the FCRA. In that regard, Plaintiffs cannot "artfully plead" by arguing that they elected to bring their disability discrimination claims under the FCRA, but not the ADA.

16.    Second, even though the FCRA is cited in Counts V through VII, this Court has mandatory supplemental jurisdiction under 28 U.S.C. § 1367(a) because any alleged claim under the FCRA arises under the same case and controversy, and/or the "same set of operative facts" as Plaintiffs' ADA claims. And, in any event, a claim under the FCRA does not preclude a claim under the ADA to which Plaintiffs expressly and repeatedly cite.

---

[1] A cursory review of the allegations giving rise to Count II and the allegations in Counts V through VII shows that Plaintiffs: (1) expressly identify the ADA; (2) allege protected status under the ADA; (3) contend that Defendant violated the requirements of the ADA;(4)  were damaged as a result of Defendant's non-compliance with the ADA's requirements; and, (5) seek relief under the ADA. Compl. at ¶¶ 110-134, 203-208, 228-237, 240-248, 250-259.

17.     Plaintiffs' reference to Fla. Stat. § 509.092 is immaterial for the same reasons as their citation to the FCRA is not dispositive. This is in addition to the fact that § 509.092 is not applicable to Defendant in the first instance as a matter of law. *See* Fla. Stat. §§ 509.013(4)(b)(1), (5)(b)(1) (excluding "living facilities . . . maintained by a public or private school," and "any place maintained and operated by a . . . private school, college, or university" from definitions applicable to § 509).

18.     Third, it is well settled that "the underlying wrong allegedly committed by an employer in a negligent supervision or negligent retention claim must be based on an injury resulting from a tort which is recognized under common law." *Footstar Corp. v. Doe*, 932 So.2d 1272,1278 (Fla. 2d DCA 2006) (quoting *Scelta v. Delicatessen Support Serv., Inc.*, 57 F.Supp.2d 1327, 1348 (M.D. Fla. 1999). Accordingly, Plaintiffs cannot rely on alleged violations of the ADA and/or Title IX to support their "negligence" claims, as neither are considered a tort recognized under common law. *See Curley v. Lifestream Behavioral Ctr., Inc.*, No. 5:15-cv-183-Oc-30PRL, 2015 U.S. Dist. LEXIS 103211, *9 (M.D. Fla. Aug. 6, 2015). Here, however, Plaintiffs' "negligent supervision and retention" claims do not allege a common law duty, and do not rely on or allege a violation of a common law duty. *See e.g.*, Compl. ¶¶ 229-232, 240-242, 250-252; *see also id.* at ¶¶ 220-221 (alleging mishandling of "reports of student-on-student sexual assault and/or sexual harassment and/or threats of violence, and discrimination based upon their

disabilities and/or gender and/or race and/or status as LGBTQ+" – none of which implicate a duty or tort recognized under Florida common law). As reflected by their own voluminous allegations, Plaintiffs rely only on rights created under various federal civil rights statutes. *See, e.g.,* Compl. ¶ 237(a) (Ringling allegedly breached its duty by "failing to determine whether said employees were adequately trained in the supervision and care of student and employee complaints of *failure to provide reasonable accommodations as required by Federal and Florida law*"); ¶ 247(f)-(k) (same); ¶ 248(m)-(r) (same).

19.     As a whole, Plaintiffs' "common law" claims of "discrimination" and "retaliation" arise under, and are otherwise preempted by, federal law, including Titles I and III of the ADA, Title VII, and/or Title IX.

20.     For example, Plaintiff Henning's negligent supervision and retention claim (Count V) expressly alleges that Defendant's "conduct and mishandling of [Henning's] request for a reasonable accommodation resulting in [her] forced resignation from her employment as an RA at Ringling constitute violations of the Americans with Disabilities Act, as amended by the ADA Amendments Act ("ADAAA"), 42 U.S.C. §§ 12101 to 12213 (collectively, the 'ADA')…". *Id*. at ¶ 230. *See also id.* at ¶ 234 ("at all relevant times, Ringling had actual knowledge of, and/or was deliberately indifferent to, Shaffer's failure to provide Caiti with a reasonable accommodation as required by Florida and federal law.").

21.     Plaintiffs Wilson's and Berger's negligent supervision and retention claims also allege violations of, and arise under, the ADAAA. *Id*. at ¶¶ 241, 251-252. In support of these claims, Plaintiffs allege:

- "RINGLING, through SHAFFER, discriminated against Lauren and harassed Lauren by creating a hostile work environment that targeted Lauren's areas of sensitivity due to her medical condition, thereby violation the Americans with Disabilities Act." *Id.* at ¶ 241. And, "[a]s a result of Ringling's violations of Title III of the ADA and the FCRA, Lauren sustained past and future lost wages and benefits, plus interest, and mental injury." *Id.* at ¶ 242.

- "Title III of the ADA prohibits discrimination against students with disabilities in any private college, including Ringling.  Ringling, through Shaffer, discriminated against Nick and harassed Nick by mistreating Nick during a mental health crisis, thereby violating the American with Disabilities Act, as amended by the ADA Amendments Act, 42 U.S. C. §§ 12101 to 12213." *Id*. at ¶¶ 251-52.

22.     Similarly, Plaintiffs cite to Title IX and the VAWA as the basis for Defendant's alleged duty to Plaintiffs, the same duty or duties Defendant allegedly breached. *See e.g.*, Compl. at ¶ 269; *infra*.

   **C.    <u>Federal Question Jurisdiction Exists Under Title IX and Federal Laws</u>**

23.     Although artfully pled under headings purporting to be common law claims, each of the claims in the Complaint necessarily, and substantially, relate to Title IX and the Federal Laws governing gender discrimination in the higher education setting.

24.     These Federal Laws are identified and referenced throughout Plaintiffs' general allegations. *See* Compl. ¶¶ 1-74. For example, the Introduction section of the Complaint alleges:

- "RINGLING failed to protect Plaintiffs from the mishandling of student-on-student reports of sexual assault, sexual harassment, threats of violence and stalking." Compl. at p. 1.

- "RINGLING breached its duty to protect Plaintiffs…from discrimination based upon gender, race, disabilities and LGBTQ+ status." *Id*. at pp. 1-2.

- RINGLING failed to protect student employee plaintiffs from discrimination based upon disabilities and gender." *Id*. at 2.

- "RINGLING… silenc[ed] students and cover[ed] up reports of student-on-student misconduct and violations of Florida and <u>federal</u> anti-discrimination laws since 2008" *Id*. (emphasis added).

- "RINGLING engaged in this conduct to misrepresent its campus as an extraordinarily safe campus[.]" *Id*.

25.     The substance of Plaintiff Ruiz's claims also expressly implicates federal questions relating to the Federal Laws. For example, the Complaint alleges that the genesis of this lawsuit stems from a June 24, 2022 "Open Letter" authored by Plaintiff Ruiz. Compl. ¶¶ 17-21. Plaintiffs allege that this Open Letter raised "public claims" against a former employee of Defendant that included his:

- Mishandling and misconduct relating to student-on-student reports of sexual assault;

- Mishandling and misconduct relating to student-on-student reports of stalking;

13

- Mishandling and misconduct relating to student-on-student reports of violence and threats of violence;

- Mishandling and misconduct related to the handling of students' private information, including but not limited to violations of HIPAA and FERPA [*see infra*];

- Discrimination related to students identifying as LGBTQ+;

- Discrimination related to students with lower socioeconomic status;

- Discrimination related to students based upon race;

- Discrimination related to students based on disability;

- Discrimination related to students based upon mental health and invisible disabilities; and

- Discrimination related to students based upon gender.

*Id*. at ¶ 22.

26.    Plaintiffs further allege that Defendant failed to comply with its Title IX and related federal obligations regarding the disclosure of crimes against students. *See e.g., id*. at ¶¶ 44, 66

27.    Additionally, Plaintiffs' claims allege non-compliance with Defendant's Title IX related policies and procedures, including its Non-Harassment Policy, and Title IX Compliance Policy and procedures—all of which are based on definitions and frameworks articulated by Title IX and regulations promulgated by the U.S. Department of Education. *See e.g.,* Compl. at ¶¶ 51-58, 61-74

("RINGLING'S Title IX Department, Human Resources Department, and Associate Dean of Students for Resident Life, SHAFFER, worked in tandem with Larry Thompson and Tammy Walsh to ensure that student and alumni reporters of student-on-student misconduct and student and alumni reports of discrimination were silenced and that applicable reports were not reported to the department of Education in compliance with Title IX"); *see also* 34 C.F.R. § 668.46.

28.    Moreover, Plaintiffs allege that Defendant prevented and dissuaded them from reporting misconduct, denied them participation in reporting misconduct, denied them educational benefits, and/or subjected them to discrimination based on sex—which precisely aligns with the provisions and proscriptions of Title IX. *See e.g.*, Compl. at ¶ 67 (alleging that Ringling dissuaded student victims who attempted to report student-on-student sexual assault, stalking, threats of violence, and violence from reporting such occurrences), ¶ 68 (alleging that Ringling engaged in discriminatory and retaliatory practices), and ¶¶ 71-72 (alleging that Ringling denied Plaintiffs from engaging/participating in the reporting of student-on-student misconduct). These same general allegations are incorporated in each of the nine (9) counts asserted in the Complaint. *Id*. at ¶¶ 194, 202, 209, 219, 228, 239, 249, 260, and 267. In simple terms, without actually styling their claims as Title IX claims, Plaintiffs are, in fact, alleging that Defendant violated, and failed to meet their obligations under, Title IX.

29.    Individually, Plaintiff Lyra Wilson alleges that she was not allowed to attend the Title IX committee hearing on her report of student-on-student misconduct. *Id*. at ¶ 83. She further alleges that Defendant violated Title IX by not including her report in its Clery Act disclosures "to the Department of Education as required by Title IX." *Id*. at ¶ 85. Plaintiff Wilson also expressly alleges that Defendant discriminated against her on the basis of sex (something uniquely prescribed in the higher education context by Title IX but not barred by any Florida common law). *Id*. at ¶ 86.

30.    Plaintiff Lauren Wilson's individual allegations also arise under Title IX, including that she was discriminated against in terms of her college employment. *Id*. at ¶¶ 90-109 and 244 ("RINGLING had actual knowledge of, and/or was deliberately indifferent to, SHAFFER'S creation of a hostile work environment in violation of Florida and Federal law, of SHAFFER'S discrimination of Lauren as a student with disabilities, and of SHAFFER'S practice of systemically mistreating student employees").

31.    Plaintiff Roxeanne Zinsser's individual allegations substantively arise under Title IX and seek damages against Defendant for its alleged violations of Title IX's provisions regarding student-on-student harassment, reporting, investigating, and enforcement/application of Defendant's Title IX policies and procedures. *See id*. at ¶¶ 135-154 ("RINGLING had a habit, pattern, and practice of concealing

16

reports of student-on-student misconduct and improperly failing to protect victims of sexual assault. . . SHAFFER had a pattern of mishandling student complaints of sexual assault and of improperly harassing students who sought to make reports.").

32.    Plaintiff Dylan Bonner also alleges that he was subjected to discrimination and retaliation based on his reporting of student-on-student sexual misconduct, and that Defendant is liable to him for damages stemming from its non-compliance with Title IX, including its alleged failure to investigate and adjudicate its Non-Harassment and Title IX policies and procedures. *See id*. at ¶¶ 155-167 ("RINGLING had a habit, pattern, and practice of concealing reports of student-on-student misconduct and improperly failing to protect victims of sexual assault . . . SHAFFER had a pattern of mishandling student complaints of sexual assault and of improperly harassing students who sought to make reports.").

33.    Similarly, Plaintiff Bryan Paul Patterson's individual allegations assert that he was harassed and discriminated against on the basis of his sexual orientation, and for his reporting of alleged student-on-student harassment, stalking and threats of violence. *See id*. at ¶¶ 180-190. He also alleges that he was denied equal opportunities and/or protections in connection with academic programs, and that Defendant purportedly "conceal[ed] reports of student-on-student misconduct and improperly fail[ed] to protect victims of sexual harassment, stalking, and threats of violence" and that Defendant retaliated and discriminated against ("harassed")

students who made such reports and seeks damages against Defendant – of which stem from its alleged violations of Title IX. *Id.*; *see also id.* at ¶¶ 191-193 ("RINGLING had a habit, pattern, and practice of concealing reports of student-on-student misconduct and improperly failing to protect victims of sexual assault…SHAFFER had a pattern of mishandling student complaints of sexual assault and of improperly harassing students who sought to make reports.").

34. The Federal Laws are also expressly and necessarily placed at issue in all alleged counts, and in turn, constitute the legal and factual core of Plaintiffs' claims and the parties' disputes in this lawsuit.[2] Indeed, Title IX is explicitly referenced approximately forty-three (43) times in the Complaint and its exhibits and substantively raised throughout the Complaint. *See* Compl., *passim*

35. Counts I, III, IV, VIII, and IX, each contain substantial issues and bona-fide disputes requiring the resolution of federal questions under Title IX, including its discrimination provisions, as well as the provisions and regulations under the VAWA and Clery Act.

---

[2] This point is further demonstrated by the content of the Plaintiffs' "individual allegations." For example, and without limitation, Plaintiff Lyra Wilson alleges that Defendant violated its Title IX/VAWA/Clery Act obligations regarding her alleged complaint of student-on-student harassment. Compl. at ¶¶ 84-86, 88-89. Plaintiff Lauren Wilson similarly alleges that while she was employed by Defendant, she is/was "a qualified individual with a disability under the [ADA]…" and was subjected to disparate treatment. *Id*. at ¶¶ 91-94, and 108. Plaintiff Henning's "individual allegations" attempt to assert a claim of disability discrimination under the ADA under a "failure to accommodate" theory stemming from her employment with Ringling as a Residential Advisor. *Id*. at ¶¶ 110-134.

36.    For example, in Count I, Plaintiffs Lyra Wilson, Roxeanne Zinsser, Dylan Bonner, Bryan Paul Patterson, and Nickolas Berger, allege that Defendant intentionally failed to comply with its Title IX obligations to report/disclose instances of student-on-student misconduct. Compl. at ¶ 196. Specifically, Plaintiffs claim that Ringling's allegedly "false" Title IX crime reports are the fraudulent statements upon which their artfully pled "constructive fraud" claim is based. *Id*. As a result, Plaintiffs have pled Title IX and related federal issues as an essential element of their claim in Count I, which in turn requires the resolution of disputed questions of uniquely federal law.

37.    Additionally, for example, Count III is artfully pled as "negligent supervision and retention" and brought by Plaintiff Megan Rose Ruiz. In addition to incorporating the Complaint's general allegations and all attached exhibits to the Complaint (which inherently include Defendant's Title IX policies), she alleges that she suffered retaliation for making an alleged report of student-on-student misconduct and/or her attempted complaint of harassment/retaliation against Shaffer. Compl. ¶¶ 210-11. Moreover, her allegations in Count III expressly contend, as a basis of liability, that Defendant failed to determine whether Shaffer was adequately trained on Defendant's Title IX policies and procedures, and that Defendant failed "to ensure that SHAFFER complied with Florida and Federal law." *Id*. at ¶ 217. While Plaintiff Ruiz intentionally omits explicit references to Title IX

19

in Count III, her reference to "Federal law" unquestionably pertains directly to Title IX by virtue of her preceding allegations and the content of the exhibits attached to the Complaint—all of which are incorporated as part of Count III, and expressly concern substantial issues and questions of federal law, including Title IX, the VAWA, and the Clery Act and their concomitant reporting rules.

38.    Similarly, for example, Count IV substantially raises and necessarily concerns questions of federal law, particularly Title IX. *See* Compl. ¶¶ 219-227. Artfully presented as a claim of "negligent supervision and retention," Defendant's alleged legal duty to Plaintiffs arises exclusively under Title IX. *Id*. Plaintiffs allege that Defendant "mishandled reports of student-on student sexual assault and/or sexual harassment and/or threats of violence" *and* discriminated against them based on their disabilities (i.e. in violation of the ADA, *supra*), their gender (Title IX), as well as their race and status as LGBTQ+ individuals. Plaintiffs further allege, specifically, that Defendant failed to follow its Title IX policies and procedures, denying them equal opportunity/protection under the Federal Laws. *Id*.

39.    In the context of Title IX, for example, Plaintiffs allege that Defendant acted with "deliberate indifference" with respect to their sexual harassment allegations and Defendant's handling of investigations of same, as well as to its reporting/disclosure obligations. *See e.g.*, Compl. at ¶¶ 223, 225, 234, 236, 244, 246, 255, 257, and 263.

20

40.    The issue of "deliberate indifference" is part of the essential—and exclusive—legal framework governing Title IX claims based on student-on-student sexual harassment; this standard is not a standard applied to any conceivably similar claim under state law. *Sauls v. Pierce Cnty. Sch. Dist.*, 399 F.3d 1279, 1284 (11th Cir. 2005). "According to the Eleventh Circuit, deliberate indifference 'is an exacting standard, which requires showing more than gross negligence. To establish deliberate indifference, a plaintiff must show that the defendant *knew* that harm to a federally protected right was substantially likely and *failed* to act on that likelihood.'" *Id*. at \*5 (quoting *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1146-47 (11th Cir. 2014)) (emphasis in original). In other words, Plaintiffs' claims do not allege facts or even legal standards of proof relating to the necessary elements of negligent supervision or negligent retention claims under Florida common law, but rather the "exacting standard" necessary to resolve exclusively <u>federal</u> questions under Title IX (and Section 504 of the Rehabilitation Act of 1973).

41.    Plaintiffs expressly allege purported duties and requirements under Title IX, the VAWA, and/or the Clery Act, non-compliance or breach of such duties by Defendant, and allege entitlement to damages and relief based on such non-compliance/violations of federal law.  Moreover, Plaintiffs allege, albeit in an entirely conclusory and insufficient manner, elements necessary to prove liability

under Title IX and the ADA. In so doing, Plaintiffs have substantially raised questions of federal law, effectively invoking this Court's original subject-matter jurisdiction. *See e.g.*, *Perkins v. Alamo Heights Indep. Sch. Dist.* 204 F.Supp. 2d 991, 997 (W.D. Tex. April 9, 2002) (denying motion to remand, finding that "[t]he fact plaintiff seeks damages and is alleging disparate treatment between female cheerleaders and the male student athletes, leads this Court to find a federal question is raised [under Title IX].").

42.    Moreover, several claims in the Complaint expressly cite to HIPAA and FERPA, alleging that Defendant violated these statutes with respect to the handling and transmission of "students' private information." *See e.g.*, Compl. ¶¶ 132, 176, 263-64. Such claims undoubtedly arise under federal law because these federal statutes are included in the Complaint as the basis of Plaintiffs' claims. *See Doe v. Rutgers*, 2022 U.S. Dist. LEXIS 36489, *9-10 (D.N.J. Mar. 2, 2022) (finding federal question jurisdiction where the single count under a New Jersey state law alleged that that university violated FERPA).

43.    Beyond the face of the Complaint itself, evidence of Plaintiffs' artful pleading to avoid federal question jurisdiction can also be found in Plaintiffs' pre-suit demand letter.[3] A copy of Plaintiffs' Pre-Suit Demand Letter (the "Pre-Suit

---

[3] Courts may consider pre-suit demand letters in determining whether removal is proper. *See Summers v. Pier I Imps.(U.S.), Inc.*, No. 17-80638-CIV, 2017 U.S. Dist. LEXIS 222287, at *4-5 (S.D. Fla. Aug. 16, 2017).

22

Demand Letter") is attached as **Exhibit B**. A cursory review of this Pre-Suit Demand Letter expressly cites to the Federal Laws, and clearly articulates Plaintiffs' intent to bring claims under Title IX, the VAWA, the ADA and the Clery Act, underscoring that these Federal Laws are substantively, and necessarily, at issue in this case. *Id*. Plaintiff's Pre-Suit Demand Letter asserts that Defendant is liable for Shaffer's alleged wrongdoings as an agent and employee of Ringling, including:

- mishandling and misconduct related to student on student reports of sexual assault;

- mishandling and misconduct related to student on student reports of stalking;

- mishandling and misconduct related to the treatment of students with disabilities;

- Mishandling and misconduct related to the handling of students' private information, including but not limited to violations of HIPAA and FERPA;

- Discrimination related to students identifying as LGBTQ+;

- Discrimination related to students with lower socioeconomic status;

- Discrimination related to students based upon race; and

- Discrimination related to students based upon disability..

44.     Indeed, the Pre-Suit Demand Letter threatens class action litigation. *Id*. The fact that Plaintiffs have abandoned bringing a class action Complaint in favor of the fraudulent misjoinder of parties and claims, demonstrates Plaintiffs' conscious

23

efforts to artfully avoid federal court by preventing removal under the Class Action Fairness Act, and their further attempt to avoid federal jurisdiction. *See infra*.

45.    Plaintiffs' attempt to artfully couch their Federal Law claims under state common law claims are non-cognizable and legally invalid; these and other grounds for dismissal will be addressed in Defendant's forthcoming dispositive motion. Notwithstanding the legal and factual deficiencies that ultimately require the dismissal of Plaintiffs' claims, it remains true that without claims arising under federal law, Plaintiffs have no possible cause of action under state law. Title IX and the ADA, on the other hand, clearly provide a private right to action. *See Sauls*, 399 F.3d at 1283-84.

46.    Accordingly, Plaintiffs' artful pleading to omit federal questions and claims does not change the reality that: (i) federal claims are presented on the face of the Complaint; (ii) Plaintiffs' artfully pled state law claims turn on substantial questions of federal law; and/or (iii) Plaintiffs' state law claims are preempted by federal law. At a minimum, Plaintiffs' allegations concerning (Title I and III of) the ADA, Title IX, the VAWA, and/or the Clery Act necessarily raise federal issues, which are actually disputed and substantial, and which the Court may—and should—entertain, as doing so would not disturb any congressionally approved balance of federal and state judicial responsibilities. This is especially true given that

Florida state law does not create any right to relief, and that, as alleged, any potential right to relief turns on the resolution of federal questions.

## III.  REMOVAL IS PROPER BASED ON DIVERSITY JURISDICTION

47.  Pursuant to 28 U.S.C. § 1332(a), district courts have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. As established below, there is complete diversity of citizenship between the parties based on fraudulent misjoinder, and the amount in controversy exceeds the threshold amount for each plaintiff.

### A.  Complete Diversity of Citizenship Exists Between the Parties

#### 1.  Plaintiffs Henning and Berger Are Fraudulently Misjoined, As They Were Added Solely to Defeat Diversity Jurisdiction

48.  Plaintiff Ruiz, the lead plaintiff in this case, attended Ringling from August 2015 through May 2019.  Compl. ¶ 15.

49.  Ruiz has asserted a single claim in this lawsuit—negligent supervision and retention (Count III). Ruiz bases her claim on her allegations that in December 2018 and following her graduation in May 2019, she reported alleged misconduct and discrimination by Christopher Shaffer, Ringling's former Associate Dean of Students for Residence Life. *Id.* ¶¶ 211-212. According to Ruiz, Ringling took no action in response and failed to prevent Shaffer from filing a retaliatory defamation lawsuit against Ruiz.  *Id.* ¶¶ 213-217.

50.    Although seven individuals have joined Ruiz as plaintiffs in this lawsuit, their claims arise out of entirely different events, involving different individuals, which occurred at vastly different points in time over a thirteen-year period, as summarized below:

| Plaintiff | Date(s) of Alleged Incident(s) | Brief Description of Claim(s) | Alleged Students Involved | Alleged Ringling Employees Involved |
|---|---|---|---|---|
| Megan Rose Ruiz | December 2018 June 24, 2019 June 2020 August 2020 | Alleges that she reported alleged misconduct, discrimination based on gender, disability, and race, violations of FERPA and HIPAA and claims that Defendant took no action in response and failed to prevent Shaffer from filing a supposedly retaliatory defamation lawsuit against Ruiz. *See* Compl. ¶¶ 22 through 64. | Ruiz | President Larry Thompson, Dean Tammy Walsh, HR representatives Darren Matthews and Christine Carnegie, as well as Associate Dean of Students for Residence Life Chris Shaffer (among others) |
| Lyra Wilson | Fall 2016 | Alleges that she was sexually assaulted by another student and that Defendant mishandled her alleged report. Also claims discrimination | Lyra Wilson, JD1 | Unnamed Residential Coordinator, Chris Shaffer, Tammy Walsh |

| | | based on race and gender, and failure to comply with Title IX. *See* Compl. ¶¶ 75-89. | | |
|---|---|---|---|---|
| Lauren Wilson | August 2018 | Alleges that she was treated less favorably than other employees because she was disabled under the ADA and FCRA (diagnosed with depression, anxiety, and eating disorders). Claims she was wrongfully terminated from her Resident Advisor position after a conflict between her and her roommates. *See* Compl. ¶¶ 90-109. | Lauren Wilson, unnamed roommates | Chris Shaffer, unnamed "similarly situated employees", unnamed "on-call Residential Coordinator", Nancy Long, Tammy Walsh, Jekeyma Robinson |
| Caitlin Henning | Fall 2019 February 24, 2020 | Alleges that she suffers from severe food allergies, rendering her disabled under the ADA and FCRA, that Defendant failed to accommodate her disability (and thereby engaged in employment discrimination, apparently in violation of Title I of the ADA) by not guaranteeing her | Caitlin Henning | Unnamed Residential Coordinators, Wilrich, Shaffer, Patricia Pete, Trent Kiesling, Hammonds kitchen staff, Human Resources |

27

| | | | | |
|---|---|---|---|---|
| | | student housing with a private kitchen, and that Shaffer violated HIPAA and FERPA. *See* Compl. ¶¶ 110-134. | | |
| Roxeanne Zinsser | September 12, 2013 | Alleges that she was sexually assaulted by another student and that Defendant mishandled its response to her report by allowing the alleged assailant to attend the same class as her. *See* Compl. ¶¶ 135-154. | Roxeanne Zinsser, JD2, Emily Cano | Unnamed "assigned RA", Shaffer, 7 Ringling employees (Tammy Walsh, Head of Security, and 5 unnamed employees) |
| Dylan Bonner | Fall 2009 | Alleges that he was sexually assaulted by his roommate and that Defendant mishandled the investigation of Bonner's complaint. Also alleges discrimination based on sexual orientation. *See* Compl. ¶¶ 155-167. | Dylan Bonner, JD3 | Shaffer |
| Nickolas Berger | February 10, 2018 | Alleges that he was disabled under the ADA and FCRA, that he was berated for calling the Suicide Hotline, that Shaffer inappropriately accessed his mental health records in | Nickolas Berger, Destiny Washington | Officer of Sarasota Police Department, Shaffer |

28

| | | | | |
|---|---|---|---|---|
| | | violation of HIPAA and FERPA, and that Shaffer discriminated against him because of his disability (apparently under Title III of the ADA). *See* Compl. ¶¶ 168-179. | | |
| Bryan Paul Patterson | Fall 2008 Spring 2009 | Alleges that he is disabled under the ADA and FCRA due to a Bipolar-I diagnosis and that he was stalked, threatened, harassed, and discriminated against by another student because of his sexual orientation. Claims that Defendant mishandled complaints about that incident and an incident in which another student showed him a knife. *See* Compl. ¶¶ 180-193. | Bryan Paul Patterson, JD4 | Unnamed receptionist at Student Life offices, Shaffer, unnamed Student Life representative, unnamed Ringling representatives |

51.   As evidenced by the chart above, Plaintiffs and their claims (A) are completely unrelated to one another; (B) involve wholly distinct facts and claims (i.e. completely different forms of discrimination, retaliation, disregard of rights,

breaches of duty, etc.); (C) involve different students as victim and offender; (D) involve different Ringling employees; and (E) and span over thirteen years, and, notably, involve incidents that Plaintiffs admit occurred in distinct time periods with no overlap. For these reasons, the joinder of all Plaintiffs in this single lawsuit was clearly improper and the claims are (and should be) severable.[4] *See* Fed. R. Civ. P. 19 (mandatory joinder of parties) and 20 (permissive joinder).

52.     Two of the eight Plaintiffs—Henning and Berger—allege that they are permanent residents of the State of Florida. Compl. ¶¶ 5, 8. As such, Henning and Berger are citizens of the State of Florida.  *See Grant v. Pottinger-Gibson,* No. 0:15-cv-61150-KMM, 2017 U.S. Dist. LEXIS 111695, at *6-7 (S.D. Fla. July 17, 2017) (for diversity jurisdiction purposes, an individual is a citizen of the state in which they are domiciled, which is determined by their residence and intent to remain).

53.     The Court should, however, disregard their citizenship, as they were fraudulently misjoined with the other six (diverse) Plaintiffs, whose claims have nothing to do with Henning and Berger's claims, to defeat complete diversity jurisdiction.

54.     The Eleventh Circuit has recognized the doctrine of fraudulent misjoinder, which occurs "when a plaintiff sues a diverse defendant in state court

---

[4] Rule 21 of the Federal Rules of Civil Procedure provides that "[m]isjoinder of parties is not a ground for dismissing *an action*." Instead, the Court may *sua sponte* "drop a party." *Id.* Rule 21 also provides that the Court may "sever any claim against a party." *Id.*

and joins a viable claim involving a nondiverse party . . . even though the plaintiff has no procedural basis to join them in one action because the clams bear no relation to each other." *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010) (internal citation omitted) (citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000)).

55.    Fraudulent misjoinder exists where plaintiffs egregiously misjoin claims that "have no real connection" to each other to defeat diversity jurisdiction. *Tapscott*, 77 F.3d at 1360. In *Tapscott*, diversity existed between two plaintiffs who were Alabama citizens who brought claims against Lowe's, a North Carolina citizen. *Id.* Joined in the lawsuit, however, were other plaintiffs who brought "wholly distinct" claims against other defendants who were Alabama citizens. *Id.* The Eleventh Circuit upheld the district court's finding of fraudulent joinder in an attempt to defeat diversity jurisdiction and agreed with the district court's decision to remand to state court the claims against all defendants except Lowe's. *Id. See also M.W. v. Ford Motor Co.*, No. 8:14-cv-3132-T-24TBM, 2015 U.S. Dist. LEXIS 36895, at *4 (M.D. Fla. Mar. 24, 2015) (noting that "federal courts may disregard citizenship of resident parties and sever and remand their claims when the factual nexus between these claims and claims of diverse parties is so lacking as to render joinder under Federal Rule of Civil Procedure 20 nothing but an attempt to avoid

federal jurisdiction."); *In re Benjamin Moore Co.*, 318 F.3d 626, 630-31 (5th Cir. 2002) (recognizing the "*Tapscott* principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction.").

56.     Whether the permissive joinder of plaintiffs is proper is governed by Federal Rule of Civil Procedure 20(a)(1), which provides that "[p]ersons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."[5]

57.     Henning and Berger[6] are fraudulently misjoined because their claims against Defendant do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" as the claims of the lead Plaintiff (Ruiz) or any of the other Plaintiffs.

---

[5] This is not a situation governed by Rule 19 (Required Joinder of Parties), as complete relief may be accorded among the parties in the event the Plaintiffs proceed with separate lawsuits, and the disposing of one Plaintiff's claims in the absence of the other Plaintiffs would not impair or impede those Plaintiffs' ability to protect their individual interests, nor would so doing "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest."

[6] Defendant focuses on the two non-diverse Plaintiffs, Henning and Berger, for purposes of this diversity jurisdiction analysis. Defendant, however, preserves and does not waive its argument that the other Plaintiffs are likewise misjoined, given the lack of commonality among their claims.

58.    Henning's claims center on her allegations that she suffers from severe food allergies that render her "disabled" under the ADA and the FCRA, and that Defendant failed to accommodate her disability, and thereby engaged in employment discrimination)[7] by not guaranteeing her student housing with a private kitchen. Compl. ¶¶ 110-134. Her alleged harm occurred in Fall 2019 and on February 24, 2020. *Id.* ¶¶ 121, 129. Her allegations involve the following Ringling employees: Residential Coordinators, *Id.* ¶ 119, Wilrich, *Id.* ¶ 121, 123-24, Shaffer, *Id.* ¶ 122, and "numerous employees and representatives at Ringling  . . [including] Patricia Pete, Trent Kiesling, Wilrich, the Hammonds kitchen staff, [and] Human Resources." Id. ¶ 125.

59.    Berger's claims, on the other hand, center not on failure to accommodate claims of an employee, but on his allegations that he was diagnosed with mental health conditions and that on February 10, 2018, he committed an act of self-harm, prompting his then-girlfriend to call the Suicide Hotline. *Id.* ¶¶ 169-173. Berger claims that Shaffer berated him and his girlfriend for calling the Suicide Hotline and claims that Shaffer improperly accessed his mental health records in violation of HIPAA and FERPA. *Id.* ¶ 176. Berger claims to have suffered discrimination under the ADA as a student (apparently under Title III of the ADA, distinct  from Henning's claim that appears to fall under Title I of the ADA). *Id.* ¶

---

[7] Henning asserts she was employed as an RA.  *See* Compl. ¶ 111.

171. The individuals involved in this incident were Berger, his girlfriend, officers of the Sarasota Police Department, and Shaffer. *Id.* ¶¶ 172-76.

60.    Plaintiffs do not allege that Henning or the individuals involved in her employment failure to accommodate claims under Title I of the ADA had anything at all to do with Berger's claims under Title III of the ADA or with the claims of any other Plaintiff.

61.    Similarly, Plaintiffs do not allege that Berger, his girlfriend, or the Sarasota police department had anything to do with (or even knew about) Henning's employment discrimination claims or with the claims of any other Plaintiff.

62.    Henning and Berger's claims are thus wholly distinct from each other and occurred at different time periods. Moreover, they are entirely distinct from the claims of Ruiz and the other Plaintiffs. As summarized in the chart above, Plaintiffs' claims arise from a host of alleged grievances scattered over a thirteen-year period, ranging from wrongful termination based on an alleged disability, mishandling of a sexual assault report, mishandling of a discrimination complaint, and failure to prevent Defendant's former employee from filing a defamation lawsuit against a former student.   The facts are all different, the time frames are all different (there is a decade separating the matriculation of some Plaintiffs!), and the individuals and witnesses involved vary widely from one Plaintiff to the next. Indeed, no Plaintiff even alleges they have firsthand knowledge of the claims of any other Plaintiff, nor

34

do they even allege they know each other. The only common thread seems to be that each Plaintiff reacted to Ruiz's social media post and had some interaction, at some point, with Shaffer.

63.    Further, there is no "question of law or fact common to all plaintiffs" that "will arise in the action," as required for proper joinder. Fed. R. Civ. P. 20(a)(1). Indeed, the lead Plaintiff (Ruiz) only seeks recovery under a single theory—negligent supervision and retention—in a count that is shared with no other Plaintiffs (Count III). While the remaining Plaintiffs lump their claims under four overarching *theories*—constructive fraud, negligent supervision and retention, breach of implied contract, and breach of fiduciary duty—the similarity stops there. The facts underlying each Plaintiff's claims (and supposedly giving rise to negligence and other claims) are completely different and based on completely different breaches of duty or failure to train and supervise.

64.    Tellingly, Henning has two standalone counts shared with no other Plaintiff—constructive fraud (Count II) and negligent supervision and retention (Count V). Likewise, Berger has an independent count for negligent supervision and retention that is shared with no other Plaintiff (Count VII).

65.    Henning's claims would necessitate evidence of, among other things, representations made to her personally by Ringling regarding a safe environment for students and staff with disabilities, her alleged requests for accommodation as an

RA, the circumstances of her resignation from her RA position, economic and wage-related damages she allegedly suffered, medical expenses she allegedly incurred, and alleged "negative impacts on her mental and physical health." Compl. ¶¶ 208, 238.

66.     Berger's claims would require entirely separate evidence of, among other things, whether Defendant knew of Berger's alleged disability under Title III of the ADA, whether Defendant discriminated against and/or harassed Berger, the economic damages he allegedly suffered, and the medical expenses for mental health treatment that he allegedly incurred. *Id.* ¶ 259.

67.     Given the vastly different nature of allegations, which necessarily turn on isolated incidents—each specific to *only one* plaintiff and bearing no logical relationship to any of the others—the misjoinder of Henning and Berger is egregious. *Tapscott*, 77 F.3d at 1360; *see also Luria v. T-Mobile*, No. 20-24012, 2021 U.S. Dist. LEXIS 7537 (S.D. Fla. Jan. 13, 2021) (severing and remanding claims of non-diverse defendant when plaintiff "fail[ed] to allege any facts directly connecting the claims against defendants" making the attempted joinder unreasonable and egregious); *M.W. v. Ford Motor Co.*, *supra* (finding fraudulent joinder of defendants where their claims were not logically related and required the analysis of two separate and distinct transactions and occurrences); *Spinnaker Cove Condo. Ass'n v. Affordable Exterminating, Inc.*, No. 8:21-cv-2379-JLB-AEP, 2021

36

U.S. Dist. LEXIS 237608 (M.D. Fla. Dec. 13, 2021) (granting motion to sever and remand to state court allegations of a fraudulently joined defendant).

68.    As a result, Henning and Berger are fraudulently misjoined and their citizenship should not be considered for diversity jurisdiction purposes.

### 2.    The Remaining Plaintiffs Are Citizens of States Other than Florida

69.    An individual is a citizen of the state in which they are domiciled, which is the state where the individual maintains their "true, fixed, and permanent home." *Brooks v. Sears, Roebuck & Co.*, No.  6:18-cv-554-Orl-37DCI, 2018 U.S. Dist. LEXIS 124390, at *10 (M.D. Fla. 2018) (quoting *McCormick v. Aderholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002)). While there is a presumption that the state in which a person resides is that person's domicile, for purposes of diversity jurisdiction, domicile is determined by residence and intent to remain. *Grant v. Pottinger-Gibson,* No. 0:15-cv-61150-KMM, 2017 U.S. Dist. LEXIS 111695, at *6-7 (S.D. Fla. July 17, 2017); *Jakobot v. Am. Airlines, Inc.,* No. 10-61576-CIV-LENARD, 2011 U.S. Dist. LEXIS 64824, at *5 (S.D. Fla. June 20, 2011). As such, courts consider a party's residence as part of the "totality of the evidence" to supplement a residence allegation. *Grant*, 2017 U.S. Dist. LEXIS 111695, at *6-7.

70.    Plaintiff Ruiz alleges in the Complaint that she is a resident of the State of California. Compl. ¶ 2.

71.    Plaintiff Lyra Wilson alleges in the Complaint that she is a resident of the State of Georgia. *Id.* ¶ 3.

72.    Plaintiff Lauren Wilson alleges in the Complaint that she is a resident of the State of Louisiana. *Id.* ¶ 4.

73.    Plaintiff Zinsser alleges in the Complaint that she is a resident of the State of California. *Id.* ¶ 6.

74.    Plaintiff Bonner alleges in the Complaint that he is a resident of the State of Michigan. *Id.* ¶ 7.

75.    Plaintiff Patterson alleges in the Complaint that he is a resident of the State of Washington. *Id.* ¶ 9.

76.    Accordingly, Defendant has satisfied its burden of showing that the remaining Plaintiffs are, and have been at all relevant times, citizens of states other than the State of Florida, and that there is complete diversity of citizenship among the parties under 28 U.S.C. § 1332.

### 3.    Defendant is a Citizen of the State of Florida

77.    At the time the Complaint in the Circuit Court Case was filed, Defendant was, and continues to be, a Florida corporation with its principal place of business in Sarasota, Florida.  *See* Compl. ¶ 10.

78.    Defendant controls its operations from Florida, where its campus and executive and administrative offices are located.  *Id.*

79.     Therefore, Defendant is a citizen of Florida. *See* 28 U.S.C. § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's 'nerve center.' And in practice it should normally be the place where the corporation maintains its headquarters….") (citations omitted).

80.     As discussed below, none of the Plaintiffs (other than the misjoined Henning and Berger) are citizens of the State of Florida like Defendant. Therefore, Defendant satisfied its burden of showing that there is complete diversity of citizenship among the parties.

**B.     The Amount in Controversy Exceeds $75,000 For Each Plaintiff[8]**

81.     "Where the plaintiff has not [pled] a specific amount of damages . . . the defendant is required to show by a preponderance of the evidence that the amount in controversy can more likely than not be satisfied." *Kirkland v. Midland Mtg. Co.*, 243 F.3d 1277, 1281 n.5 (11th Cir. 2001). While courts may not speculate or guess as to the amount in controversy, "Eleventh Circuit precedent permits district courts

---

[8] The following analysis is made to demonstrate that the amount in controversy in this action is more likely than not in excess of the jurisdictional limit at issue. By making this analysis, Defendant makes no admission that Plaintiffs are entitled to any damages or to any form of relief whatsoever.

to make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent that a case is removable." *Cowan v. Genesco, Inc.*, No. 3:14-cv-261-J-34JRK, 2014 U.S. Dist. LEXIS 95412, *6 (M.D. Fla. July 14, 2014) (quoting *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010)). A court need not "suspend reality or shelve common sense in determining whether the face of a Complaint., or other document, establishes the jurisdictional amount." *Pretka*, 608 F.3d at 770 (internal quotations and citations omitted).

82.    "[I]f a removing defendant makes specific factual allegations establishing jurisdiction and can support them . . . with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations[,] that kind of reasoning is not akin to conjecture, speculation, or star gazing." *Id.* at 754. The defendant "need only prove the jurisdictional facts necessary to establish that . . . damages in an amount necessary to reach the jurisdictional minimum are at issue – that is, that such damages *could be* awarded." *McDaniel v. Fifth Third Bank*, 568 F. App'x 729, 731 (11th Cir. 2014).

### 1.    Plaintiff's Pre-Suit Demand Letter Establishes that the Amount in Controversy Exceeds $75,000

83.    On April 19, 2022, Plaintiffs delivered to Defendant  the Pre-Suit Demand Letter offering to forego filing the current lawsuit in exchange for a

40

monetary settlement in the amount of $20,000,000.00 from Ringling to all Plaintiffs.[9] *See* **Exhibit B.**

84. This is an amount more than two-hundred and sixty-sixty (266) times the jurisdictional minimum of $75,000. In support of Plaintiffs' Pre-Suit Demand Letter amount, seven (7) Plaintiffs provided ***sworn affidavits*** attached to the letter which detailed their alleged damages resulting from the facts at issue in this litigation. Plaintiffs provided thirty (30) pages of exhibits supportive of their settlement demand amount. ***Id.***[10]

85. Settlement demand letters seeking damages exceeding $75,000 are evidence that may be submitted by the removing party and considered by courts for purposes of determining whether diversity jurisdiction exists. *Deal v. Evangelical Lutheran Good Samaritan Soc'y*, No. 6:14-cv-7-Orl-28KRS, 2014 U.S. Dist. LEXIS 58245, at *5 (M.D. Fla. Apr. 25, 2014). Further, courts have found demand letters to be "'legally certain evidence'" that the amount in controversy meets federal

---

[9] Further, Plaintiffs' civil cover sheet filed in the Circuit Court Case and attached hereto as **Exhibit A, at pp. 1-4**, estimates the value of Plaintiffs' claims as exceeding $100,000 (the highest amount listed on the civil cover sheet). *See Rios v. Wal-Mart Stores E., LP*, No. 8:22-cv-01089-AAS, 2022 U.S. Dist. LEXIS 117022, at *3 (M.D. Fla. July 1, 2022) ("Under 28 U.S.C. §1446(c)(3)(A), the civil cover sheet is information in the record of the 'State proceeding' that 'shall be treated as an 'other paper'"); *see also Morsch v. JPMorgan Chase Bank, N.A.*, No. 6:20-cv-983-Orl-40EJK, 2020 U.S. Dist. LEXIS 264007, at *4 (M.D. Fla. July 30, 2020) (finding the estimated amount of damages listed in Plaintiff's civil cover sheet and Plaintiff's settlement demand of $3,000,000 were evidence that Defendant established the amount in controversy more than likely exceeded $75,000).

[10] Defendant has not included these attachments in **Exhibit B**, as they are also attached to Plaintiffs' Complaint included in **Exhibit A.**

jurisdictional requirements. *Id.* (citing *Bowen v. State Farm Mut. Auto. Ins. Co.*, No. 6:10-cv-144-Orl-19DAB, 2010 U.S. Dist. LEXIS 39433, 2010 WL 1257470, at *3 (M.D. Fla. Mar. 29, 2010)); *see also Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) ("[a] settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of plaintiff's claim"); *AAA Abachman Enters., Inc. v. Stanley Steemer Int'l, Inc.*, 268 F. App'x 864, 866-67 (11th Cir. 2008) (upholding lower court's ruling that a demand letter from plaintiff's counsel stating that plaintiff would suffer "hundreds of thousands of dollars in damages" was sufficient to establish that the amount in controversy exceeded $75,000); *Martin v. Mentor Corp.*, 142 F. Supp. 2d 1346, 1349 (M.D. Fla. 2001) (stating a written settlement demand may be used to establish that a case is removable).

86.     Plaintiffs' Pre-Suit Demand Letter equates to $2,500,000 in damages per Plaintiff. Based on Plaintiffs' demand, the amount in controversy far exceeds the requisite $75,000 jurisdictional amount for each Plaintiff. Therefore, this case is removable pursuant to 28 U.S.C. § 1332.

**2.     Lead Plaintiff Megan Ruiz's Damages Exceed the Jurisdictional Amount**

87.     Lead Plaintiff Megan Ruiz's damages, standing alone, exceed the amount in controversy and, therefore, this Court's jurisdiction over the remaining

Plaintiffs' claims is proper pursuant to 28 U.S.C. § 1367.[11] *See Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 549 (2005) ("where the other elements of jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction"); *see also McIntosh v. Royal Caribbean Cruises, Ltd.*, 5 F. 4th 1309, 1312 (11th Cir. 2021).

88.    In Count III for negligent supervision and retention, Ruiz seeks to recover compensatory damages, reimbursement of attorneys' fees and costs incurred during her ongoing defamation litigation with Christopher Shaffer ("Defamation Lawsuit"),[12] attorneys' fees and costs incurred in the current litigation, and other relief deemed proper by the Court. As will now be shown, Ruiz's demand for

---

[11] Defendant's reference to the "remaining Plaintiffs" does not include Plaintiffs Henning and Berger, who Defendant maintains were fraudulently joined in this action to defeat diversity jurisdiction. Defendant further acknowledges that, should this Court agree with Defendant that all Plaintiffs are improperly joined, § 1367 jurisdiction would not be applicable given that each plaintiff would have to proceed with their own individual lawsuit once they were dropped as permitted by Rule 21. Of course, if the Court agrees it maintains federal question jurisdiction as discussed above, the Court has jurisdiction over Henning and Berger as well. Ringling's point here is simply that for diversity purposes, the Court need not and should not consider Henning and Berger's damage claims as it evaluates the amount in controversy with respect to all remaining Plaintiffs.

[12] This case is currently pending in the Circuit Court for the Twelfth Judicial Circuit in and for Sarasota County, Florida, Case No. 2020-CA-003308.

attorneys' fees in connection with the Defamation Lawsuit alone meets the amount in controversy requirement.  Compl. ¶ 218.

89.    In Ruiz's individual settlement demand letter to Defendant dated October 29, 2021 ("Ruiz's Demand Letter"), Ruiz's attorney, Starlett Massey, stated that Ruiz maintains a fundraising account on the crowdfunding platform, "GoFundMe," with contributions going directly toward the legal fees and costs associated with the Defamation Lawsuit. **Exhibit C**. Ruiz's GoFundMe page states, "Because Chris Shaffer filed a civil lawsuit against me, I am forced to hire an attorney to defend me. All the money raised from this campaign will go towards the cost of my defense." **Exhibit D**. The page further states that the fund was organized by Megan Ruiz on behalf of her attorneys, Massey Law Group. *Id.* As of July 26, 2022, Ruiz's fundraising account has raised $86,451.00, and maintains a $200,000 goal for donations. *Id.*

90.    Both Ruiz and her attorneys have confirmed the validity of this GoFundMe page, and that the funds raised therein have gone directly toward paying the attorneys' fees and costs that Ruiz now seeks to recover as damages in the present litigation.[13] Moreover, based on their statements, Ruiz and her attorneys value the

---

[13]    The    Court's    consideration    of    this    evidence    is    proper,    as    "[t]he substantive jurisdictional requirements of removal do not limit the types of evidence that may be used to satisfy the preponderance of the evidence standard. Defendants may introduce their own affidavits, declarations, or other documentation." *Pretka*, 608 F.3d at 755 ("Sometimes the defendant will possess evidence that was not received from the plaintiff but which nonetheless sheds light on the value of the plaintiff's claims."). *See also Lowery v. Ala. Power Co.*, 483 F.3d

fees and costs of the Defamation Lawsuit (which Ruiz seeks to recover through this lawsuit) at a minimum of $200,000.00. The costs of the Defamation Lawsuit against Ruiz, standing alone, satisfy the amount in controversy and, therefore, this Court's jurisdiction is proper under 28 U.S.C. § 1332 with respect to Ruiz's claims, and under 28 U.S.C. § 1367, as to the remaining Plaintiffs' claims.

### 3.   The Remaining Plaintiffs' Claims Individually Meet the Amount in Controversy

91.   The remaining Plaintiffs allege and demand the following damages:

| Count Number | Claim | Plaintiffs Bringing Claim | Alleged Damages | Judgment Demand |
|---|---|---|---|---|
| I | Constructive Fraud | Lyra Wilson, Roxeanne Zinsser, Dylan Bonner, Bryan Paul Patterson | Trauma, financial losses, negative impacts on mental and/or physical health, loss of enjoyment of life Emotional and/or physical pain and suffering, and other economic or non-economic damages. Compl. ¶ 201. | Compensatory damages attorneys' fees and costs, and such other relief deemed proper by the Court. Compl., Wherefore clauses following ¶ 201. |

1184, 1214 n.66 (11th Cir. 2007) ("A defendant would be free to introduce evidence regarding damages arising from a source such as a contract provision whether or not the defendant received the contract from the plaintiff.")

| | | | | |
|---|---|---|---|---|
| IV[1415] | Negligent Supervision and Retention | Lyra Wilson, Roxeanne Zinsser, Dylan Bonner, Bryan Paul Patterson | Medical expenses associated with mental health treatment, inconvenience, insult, mental distress, humiliation, physical assault, anxiety, emotional and physical pain and suffering, loss of enjoyment of life, economic damages, and other non-economic damages. Compl. ¶227. | Compensatory damages attorneys' fees and costs, and such other relief deemed proper by the Court. Compl., Wherefore clauses following ¶ 227. |
| VI[16] | Negligent Supervision and Retention | Lauren Wilson | Trauma, exacerbation of pre-existing mental health conditions, financial past and future lost wages, and benefits, plus interest, negative impacts on mental and physical health, medical expenses associated with mental health treatment, inconvenience, | Compensatory damages attorneys' fees and costs, and such other relief deemed proper by the Court. Compl., Wherefore clauses following ¶ 248. |

---

[14] Count II consists of damages claims brought solely by Plaintiff Caitlin Henning, whom Defendant has already established *supra* was fraudulently misjoined in this action. As such, Count II is omitted from this chart.

[15] Count III consists of damages claims brought solely by Plaintiff Ruiz, which Defendant has already established *supra* meet the minimum amount in controversy. As such, Count III is omitted from this chart.

[16] Count V consists of damages claims brought solely by Plaintiff Caitlin Henning, whom Defendant has already established *supra* was fraudulently misjoined in this action. As such, Count V is omitted from this chart.

| | | | | |
|---|---|---|---|---|
| | | | insult, mental distress, humiliation, anxiety, emotional pain and suffering, loss of enjoyment of life, economic damages, other economic and non-economic damages. Compl. ¶ 248. | |
| VIII[17] | Breach of Implied Contract | Lyra Wilson, Lauren Wilson, Roxeanne Zinsser, Dylan Bonner, Bryan Paul Patterson | Medical expenses associated with mental health treatment, inconvenience, insult, psychological damages, humiliation, physical assault, anxiety, emotional pain and suffering, loss of income or other compensation, loss of employment, and other economic and non-economic damages. Compl. ¶ 266. | Compensatory damages attorneys' fees and costs, and such other relief deemed proper by the Court. Compl., Wherefore clauses following ¶ 266. |
| IX | Breach of Fiduciary Duty | Lyra Wilson, Lauren Wilson, Roxeanne Zinsser, Bryan Paul Patterson | Medical expenses associated with mental health treatment, inconvenience, insult, psychological damages, humiliation, | Compensatory damages attorneys' fees and costs, and such other relief deemed proper by the Court. Compl., |

---

[17] Count VII consists of damages claims brought solely by Plaintiff Nickolas Berger, whom Defendant has already established *supra* was fraudulently misjoined in this action. As such, Count VII is omitted from this chart.

| | | | physical assault, anxiety, emotional pain and suffering, loss of income or other compensation, loss of employment, and other economic and non-economic damages. Compl. ¶ 283. | Wherefore clauses following ¶ 283. |
|---|---|---|---|---|

### a.    **Compensatory Damages**

92.    Each Plaintiff seeks compensatory damages for a variety of alleged injuries including emotional distress, physical assault, anxiety, loss of enjoyment of life, and other economic and non-economic damages—all of which may be counted towards the amount in controversy. *Brown v. Cunningham Lindsey U.S., Inc.*, No. 3:05-cv-141-J-32HTS, 2005 U.S. Dist. LEXIS 38862, at *17 (M.D. Fla. May 11, 2005) (In an employment discrimination claim brought pursuant to the FCRA, the court found that "[w]hile [Plaintiff] does not place a dollar figure on her punitive and compensatory damages claims, the Court concludes that these additional damage claims further increase the amount in controversy").

93.    Plaintiffs allege that Defendant's conduct caused them "insult, mental distress, humiliation, physical assault, anxiety, emotional and physical pain and suffering, loss of enjoyment of life, psychological damages, humiliation, [and] anxiety." *See* Compl., wherefore clauses following ¶¶ 201, 208, 227, 248, 266, 283. The potential value of any damages based on those allegations, especially given the

48

egregious nature of the allegations involving sexual assaults and related discrimination and coupled with Plaintiffs' own multi-million dollar demand, tips the scale further in favor of a finding that Plaintiffs' potential damages exceed $75,000. It is clear that "evidence of compensatory damages" can be considered in ascertaining if the amount in controversy exceeds $75,000. *See Pease v. Medtronic, Inc.*, 6 F. Supp. 2d 1354, 1357 (S.D. Fla. 1998). Courts will typically look to verdicts in cases with similar allegations. *See Schmidt v. Pantry, Inc.,* No. 1:11-cv-228-SPM-GRJ, 2012 U.S. Dist. LEXIS 53530, at *10 (N.D. Fla. Mar. 6, 2012) ("While it is difficult to quantify the value of [compensatory] damages, for purposes of determining the amount in controversy, a defendant may satisfy its burden by submitting evidence of damages from decisions in comparable cases." (citing S*immons v Washington Mutual Finance, Inc.,* no. 8:06-cv-01613-JDW-TBM, 2007 U.S. Dist. LEXIS 12984, at *1 (M.D. Fla. Feb. 22, 2007); *Holman v. Montage Group,* 79 F. Supp. 2d 1328, 1330 (S.D. Ala. 1999)).

94.     Here, looking at cases that address similar claims to those alleged by the Plaintiffs here within the Eleventh Circuit (discrimination or negligence claims giving rise to sexual assaults, intentional discrimination, and such similar claims), it is clear the amount in controversy is easily met. *See, e.g., Doe v. Celebrity Cruises, Inc.,* 394 F.3d 891 (11th Cir. 2004) (upholding $1 million jury verdict for compensatory damages on sexual battery claim); *Zurich Am. Ins. Co. v. S. Atlanta*

*Urgent Care Clinic, LLC*, No. 1:16-CV-1633-SCJ, 2017 U.S. Dist. LEXIS 164552 (N.D. Ga. Feb. 1, 2017) (finding that sexual assault claim exceeded the $75,000 limit; recognizing that "[s]exual assault is not a 'slap on the wrist' matter. It's a deeply personal violation and juries very often see fit to award substantial damages."); *Munoz v. Oceanside Resorts, Inc.,* 223 F.3d 1340, 1348-49 (11th Cir. 2000) (affirming jury verdict from the Southern District of Florida awarding plaintiff $150,000 for mental anguish, loss of dignity and other intangible injuries in discrimination case); *Hill v Xerox Corp.*, 998 F. Supp. 1378, 1384 (N.D. Fla. 1998) ($457,000 jury verdict for mental anguish in employment discrimination case); *Landry v. Howell*, No. 5:14-CV-167 (LAG), 2019 U.S. Dist. LEXIS 236115 (M.D. Ga. May 17, 2019) (jury awarded $116,790 for negligent supervision and retention claim); *EEOC v. Nunez, Inc.*, No. 1:09-CV-2661-WSD-AJB, 2011 U.S. Dist. LEXIS 159963, at *98-101 (N.D. Ga. Feb. 28, 2011) (discussing cases involving significant compensatory damages awards exceeding $100,000); *Baker v City of Safety Harbor, Fla.,* no. 8:07-CV-1120-T-23TGW, 2008 U.S. Dist. LEXIS 94902, at *1 (M.D. Fla. Nov. 12, 2008) (jury verdict for $60,000.00 in pain and suffering in discrimination case); *Reilly v Duval County,* no. 3:04-CV-1320-J-32MCR, 2007 U.S. Dist. LEXIS 52926, at *1 (M.D. Fla. July 23, 2007) (jury award of $75,000.00 for compensatory damages in discrimination case under the FCRA); *Copley v BAX Global, Inc.*, 97 F. Supp. 2d 1164 (S.D. Fla. 2000) (emotional distress damages of $100,000.00).

95.    Plaintiffs here seek these same types of compensatory damages, asserting massive damages resulting from sexual assaults and the disregard of same, intentional discrimination, and alleged reckless disregard for their rights under multiple state and federal anti-discrimination laws. It is clear then that the amount in controversy for each Plaintiff is well in excess of the $75,000 amount in controversy in compensatory damages alone.

### b.    Economic Damages, Including Loss of Income and Employment

96.    All Plaintiffs seek economic damages, including past and future lost wages and benefits associated with a loss of employment.  Compl. ¶¶ 218 (Ruiz), 108, 242, and 248 (Lauren Wilson), 266 (Lyra Wilson, Lauren Wilson, Roxeanne Zinsser, Bonner, Patterson). As Plaintiffs admit, a number of them were employed as RAs and allege they suffered wage related damages. *Id.* at ¶¶ 16 and 210 (Ruiz), 76  (Lyra Wilson), 91, 94, and 240 (Lauren Wilson), 266 and 283 (Zinsser, Bonner, Patterson, Lauren Wilson, and Lyra Wilson).

97.    In determining whether the amount in controversy has been met, many courts have held that back pay may be calculated through the estimated date of trial. *Gonzalez v. Honeywell Int'l, Inc.*, No. 16-cv-3359, 2017 U.S. Dist. LEXIS 5837, at *4-5 (M.D. Fla. Jan. 17, 2017). *See also Wineberger v. Racetrac Petroleum, Inc.*, No. 5:14-cv-653-Oc-30PRL, 2015 U.S. Dist. LEXIS 5570, at *7-8 (M.D. Fla. Jan. 16, 2015); *Hendry v. Tampa Ship, LLC*, 8:10-cv-1849-T-30TGW, 2011 U.S. Dist.

LEXIS 14459, at *5 (M.D. Fla. Feb. 4, 2011) ("Back pay is generally calculated from the date of the adverse employment action to the date of judgment."); *Sheehan v. Westcare Found., Inc.*, No. 8:12-cv-2544-T-33TBM, 2013 U.S. Dist. LEXIS 9027, at *5 (M.D. Fla. Jan. 23, 2013) (holding "back pay for the purposes of the amount in controversy should be calculated to the date of trial."); *Cashman v. Host, Int'l*, No. 8:10-cv-1197, 2010 U.S. Dist. LEXIS 123164, at *4 (M.D. Fla. Nov. 9, 2010) (same); *Marcenaro v. Creative Hairdressers Inc.*, No. 12-60236-CIV-MARRA/BRANNON, 2012 U.S. Dist. LEXIS 56286, at *5-6 (S.D. Fla. April 23, 2012) (same); *Risk v. JetBlue Airways Corp.,* No. 16-CIV-62317-MARTINEZ/GOODMAN, 2017 U.S. Dist. LEXIS 62542, at *9 (S.D. Fla. April 24, 2017) (same); *Penalver v. Northern Elec., Inc.*, No. 12-80188-CIV-COHN/SELTZER, 2012 U.S. Dist. LEXIS 53662, *5 (S.D. Fla. April 17, 2012) (same).

98. With respect to front pay, courts in the Eleventh Circuit have held that it is reasonable to add one year of front pay to the amount in controversy in FCRA employment discrimination cases. *Gonzalez*, 2017 U.S. Dist. LEXIS 5837, at *5-6 (citing cases); *see also Wineberger*, 2015 U.S. Dist. LEXIS, at *8; *Booker*, 2017 U.S. Dist. LEXIS 220781, at *9-10; *Penalver*, 2012 U.S. Dist. LEXIS 53662, at *7.

99. Although Plaintiffs allege entitlement to lost wages in their Complaint (Compl. ¶¶ 218 (Ruiz), 108, 242, and 248 (Lauren Wilson), 266 (Lyra Wilson,

Lauren Wilson, Roxeanne Zinsser, Bonner, Patterson).), the Complaint is bereft of any allegations pertaining to the amount of lost wages they are seeking, the nature of any lost employment opportunities they are claiming, or the time frame for which they are seeking back pay.  Given the lack of specificity, as well as the enormity of their case valuation in the pre-suit demand, Defendant has, for removal purposes, conservatively calculated Plaintiffs' potential back pay based upon the minimum wage[18] of their respective states of residency, calculated from their alleged date of last employment with Defendant (or their graduation date, if their employment end date was not specified) through August 1, 2023.[19]

100.  Ruiz, a resident of California, graduated from Defendant in May 2019. Compl. ¶¶ 2, 212. Applying California's minimum wage and assuming a 40-hour workweek, her back pay from May 1, 2019 through August 1, 2023 would be $114,080, calculated as follows:

| Megan Ruiz | Minimum Wage[20] | Weekly | Annual- 52 weeks |
|---|---|---|---|

---

[18] To the extent the Court requires additional information on the Plaintiffs' compensation (including benefits) while employed by Defendant, Defendant can supplement with additional evidence.

[19] The August 1, 2023 date was picked under the conservative assumption that this case will proceed to trial within twelve months. *See Brown v. Cunningham Lindsey U.S., Inc.*, No. 3:05-cv-141-J-32HTS, 2005 U.S. Dist. LEXIS 38862, at *12 n.2 (M.D. Fla. May 11, 2005) ("Although the Court could have chosen any trial date within the twelve to eighteen month range, the twelve month figure is used because it results in the lowest back pay figure. This is consistent with the Eleventh Circuit's instruction that all uncertainties are to be resolved in favor of remand.")

[20] California implements a different minimum wage for employers with less than 25 employees. The lowest minimum wage was used for this analysis.

| May 2019-December 31, 2019 | $11.00 | $440.00 | $14,960 (34 weeks) |
|---|---|---|---|
| January 2020, December 31, 2020 | $12.00 | $480.00 | $24,960 |
| January 2021-December 31, 2021 | $13.00 | $520.00 | $27,040 |
| January 2022-December 31, 2022 | $14.00 | $560.00 | $29,120 |
| January 2023-August 1, 2023 | $15.00 | $600 | $18,000 (34 weeks) |
| | | | **Total: $114,080** |

101.   Patterson, a resident of Washington, graduated from Defendant in May 2012.  Compl. ¶¶ 9, 180.  Applying Washington's minimum wage, and assuming a 40-hour workweek, his back pay from May 1, 2012 through August 1, 2023 would be $266,032.80, calculated as follows:

| Patterson | Minimum Wage | Weekly | Annually – 52 weeks |
|---|---|---|---|
| May 1, 2012-December 31, 2012 | $9.04 | $361.00 | $12,294.40 (34 weeks) |
| 2013 | $9.19 | $367.60 | $19,115.20 |
| 2014 | $9.32 | $372.80 | $19,385.60 |
| 2015 | $9.47 | $368.80 | $19,697.60 |
| 2016 | $9.47 | $368.80 | $19,697.60 |
| 2017 | $11.00 | $440.00 | $22,880.00 |
| 2018 | $11.50 | $460.00 | $23,920.00 |
| 2019 | $12.00 | $480.00 | $24,960.00 |
| 2020 | $13.50 | $540.00 | $28,080.00 |
| 2021 | $13.69 | $547.60 | $28,475.20 |

| | | | |
|---|---|---|---|
| 2022 | $14.49 | $579.60 | $30,139.20 |
| January 1,2023 – August 1, 2023 | $ 14.49 | $579.60 | $17,388.00 (30 weeks) |
| | | | **Total: $266,032.80** |

102.   Lauren Wilson, a resident of Louisiana, worked for Defendant as a Resident Advisor from May 2017 to August 31, 2018.  Compl. ¶¶ 4, 91.  Applying Louisiana's minimum wage, and assuming a 40-hour workweek, her back pay from September 1, 2018 through August 1, 2023 would be $73,950.00, calculated as follows:

| Lauren Wilson | Minimum Wage | Weekly | Annually |
|---|---|---|---|
| September 1, 2018-December 31, 2018 | $7.25 | $290 | $4,930.00 (17 weeks) |
| 2019 | $7.25 | $290 | $15,080.00 |
| 2020 | $7.25 | $290 | $15,080.00 |
| 2021 | $7.25 | $290 | $15,080.00 |
| 2022 | $7.25 | $290 | $15,080.00 |
| January 1, 2023-August 1, 2023 | $7.25 | $290 | $8,700.00 (30 weeks) |
| | | | **Total: $73,950.00** |

103.   Lyra Wilson, a resident of Georgia, worked for Defendant on its Campus Activities Board from August 2019 to March 2020. Compl. ¶¶ 3, 76. Applying federal[21] minimum wage, and assuming a 40-hour workweek, her back

---

[21] Georgia's minimum wage has been $5.15 since 2020, so the higher federal minimum wage was used for the purpose of this analysis.

pay from March 1, 2020 through August 1, 2023 would be $51,330.00, calculated

as follows:

| Lyra Wilson | Minimum Wage | Weekly | Annually |
|---|---|---|---|
| March 1, 2020-December 31, 2020 | $7.25 | $290 | $12,470.00(43 weeks) |
| 2021 | $7.25 | $290 | $15,080.00 |
| 2022 | $7.25 | $290 | $15,080.00 |
| January 1, 2023-August 1, 2023 | $7.25 | $290 | $8,700.00 (30 weeks) |
| | | | Total: $51,330.00 |

104.    Roxeanne Zinsser, a resident of California, graduated from Defendant

in May 2017. Compl. ¶¶ 6, 135. Applying California's minimum wage, and

assuming a 40-hour workweek, her back pay from June 1, 2017 through August 1,

2023 would be $155,840.00, calculated as follows:

| Roxeanne Zinsser | Minimum Wage[22] | Weekly | Annual- 52 weeks |
|---|---|---|---|
| June 1, 2017-December 31, 2017 | $10.00 | $400 | $12,000 (30 weeks) |
| January 2018-December 31, 2018 | $10.50 | $420.00 | $21,840 |
| January 2019-December 31, 2019 | $11.00 | $440.00 | $22,880 |

_____

[22] California implements a different minimum wage for employers with less than 25 employees. The lowest minimum wage was used for this analysis, in accordance with the Court's preference to resolve uncertainty in favor of remand.

| January 2020, December 31, 2020 | $12.00 | $480.00 | $24,960 |
| January 2021-Decemebr 31, 2021 | $13.00 | $520.00 | $27,040 |
| January 2022-December 31, 2022 | $14.00 | $560.00 | $29,120 |
| January 2023-August 1, 2023 | $15.00 | $600 | $18,000 (34 weeks) |
| | | | **Total: $155,840** |

105.    Dylan Bonner, a resident of Michigan, graduated from Defendant in May 2013. Compl. ¶¶ 7, 155. Applying Michigan's minimum wage, and assuming a 40-hour workweek, his back pay from May 1, 2013 through August 1, 2023 would be $191,573.60, calculated as follows:

| **Dylan Bonner** | **Minimum Wage** | **Weekly** | **Annually** |
| --- | --- | --- | --- |
| May 1, 2013-December 31, 2023 | $7.40 | $296.00 | $10,064.00 (34 weeks) |
| 2014 | $8.15 | $326.00 | $16,952.00 |
| 2015 | $8.15 | $326.00 | $16,952.00 |
| 2016 | $8.50 | $340.00 | $17,680.00 |
| 2017 | $8.90 | $356.00 | $18,512.00 |
| 2018 | $9.25 | $370.00 | $19,240.00 |
| 2019 | $9.45 | $378.00 | $19,656.00 |
| 2020 | $9.65 | $386.00 | $20,072.00 |
| 2021 | $9.65 | $386.00 | $20,072.00 |
| 2022 | $9.87 | $394.80 | $20,529.60 |
| January 1, 2023-August 1, 2023 | $9.87 | $394.80 | $11,844.00 (30 weeks) |
| | | | **Total: $191,573.60** |

c.      **Attorneys' Fees**

106.   Like *Ruiz*, the remaining Plaintiffs also seek attorneys' fees (albeit limited to fees incurred in this lawsuit, as they are not involved in a separate lawsuit against Defendant). A reasonable amount of attorney's fees is included in the amount in controversy calculation if the statute at issue authorizes the recovery of such fees. *See Morrison v. Allstate Indem. Co.,* 228 F.3d 1255, 1265 (11th Cir. 2000). Further, where a plaintiff requests attorneys' fees and costs as a part of their claim, but does not explicitly value those fees, the court may look to evidence in the record to project the amount of fees the plaintiff is likely to incur during the course of litigation. *Harvest Moon Distribs., LLC v. S.-Owners Ins. Co.*, No. 6:20-cv-1026-Orl-40DCI, 2020 U.S. Dist. LEXIS 205592, at *5 (M.D. Fla. Aug. 12, 2020); *see also Mirras v. Time Ins. Co.*, 578 F. Supp. 2d 1351 (M.D. Fla. 2008) (finding that anticipated statutory attorney's fees were included in calculating amount in controversy).

107.   The Court is also permitted to utilize its own experience in assessing the fees likely to be recoverable if Plaintiffs (or any of them individually) prevail. *Simmons v. Wash. Mut. Fin., Inc.,* No. 8:06-CV-01613-JDW-TBM, 2007 U.S. Dist. LEXIS 12984, at *5 (M.D. Fla. Feb. 22, 2007) (citing *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1998)).

108.   Here, although Plaintiffs purport to bring claims exclusively under state law theories in an effort to evade federal question jurisdiction, Defendant

58

established above that Plaintiffs' claims are actually Title IX and ADA claims (under Title I and III), among others, deceptively framed as state law tort claims. 20 U.S.C. §§ 1681-88; 42 U.S.C. §§ 12112-12117; 42 U.S.C. §§ 12181-12189.

109.   Both Title IX and the ADA authorize an award of attorneys' fees. 42 U.S.C. §§ 1205; 42 U.S.C. § 1988(b).

110.   Courts routinely award $75,000 or more to prevailing plaintiffs as attorneys' fees in these types of cases. *Demers v Adams Homes of NW Fla.*, No. 6:06-cv-01235-GAP-KRS, 2008 U.S. Dist. LEXIS 53376, (M.D. Fla. 2006) ($135,000 fee award in retaliation lawsuit). This is all the more so here, where the claims allege egregious and serious intentional discrimination, and the incontrovertible evidence establishes that Plaintiffs' own attorney has already spent over $84,000 in fees representing only Ruiz alone in her lawsuit with Shaffer. *See supra* § II.B.2. And, as noted above, Ruiz has indicated she needs at least $200,000 in funds to have her attorney represent her. *Id.* (and exhibits cited therein).

111.   Discrimination actions with multiple plaintiffs, like the current action, further increase the likelihood that the associated attorneys' fees exceed $75,000. *Cote v. Shinseki*, No. 8:07-cv-1524-T-TBM, 2009 U.S. Dist. LEXIS 97597 (M.D. Fla. Oct. 6, 2009). In *Shinseki*, plaintiffs brought claims of discrimination and retaliation on the basis of various protected characteristics in violation of Title VII of the Civil Rights Act of 1964. *Id.* The case proceeded to trial, and the jury returned

Case 8:22-cv-01684-CEH-M_M    Document 1    Filed 07/26/22    Page 60 of 63 PageID 60

a verdict in plaintiffs' favor. The court thereafter awarded attorneys' fees to each plaintiff in amounts varying from $220,549.98 to $264,711.86. *Id.* at Doc. 198.

112.    When added to compensatory damages, lost wages, damages for physical assault, and the various other damages sought by Plaintiffs, their requested fees make it quite clear that the damages sought in this action exceed $75,000 for each Plaintiff.

113.    Plaintiffs' Complaint totals two-hundred and seven (207) pages, two-hundred eighty-three (283) paragraphs, and nine (9) counts against Defendant brought on behalf of eight (8) Plaintiffs. The fees associated with litigation of this volume promise to be substantial. This is further confirmed by Plaintiffs' Pre-Suit Demand Letter, seeking 266 times the jurisdictional minimum.

### d.    Punitive Damages

114.    Punitive damages also must be considered in calculating the amount in controversy in diversity cases, unless "it is apparent to a legal certainty that such cannot be recovered." *Holley Equip. Co. v. Credit Alliance Corp.,* 821 F.2d 1531, 1535 (11th Cir. 1987). While Plaintiffs have not specifically requested such damages yet, this is simply because under Florida law (as opposed to federal pleading rules which will now apply), they were unable to do so at the pleading stage. Fla. Stat. § 768.72. It is undeniable that punitive damages are available under the FCRA, Fla. Stat. § 760.10 as well as under Title I of the ADA.  42 U.S.C. §§ 12112-12117.

60

115.   Jury verdicts routinely award plaintiffs who succeed on claims similar to Plaintiffs with punitive damages awards in excess of the jurisdictional minimum. *Pineda v. Morning Glory Fla. Plaza, Inc.,* No. 8:15-cv-01154 (S.D. Fla. November 12, 2008) (awarding plaintiff $400,000.00 in punitive damages where defendant was found to have negligently supervised plaintiff's manager who inflicted emotional distress upon plaintiff through discriminatory comments, physical threats, and battery); *See also Jorud v. Michaels Store, Inc.*, No. 09-80885-CIV-MARRA, 2010 U.S. Dist. LEXIS 151581 (S.D. Fla. Aug. 3, 2010) (awarding $4,000,000.00 in punitive damages to plaintiff for claims of ADA and FCRA discrimination and retaliation). This is especially so where plaintiffs, such as the Plaintiffs here, allege severe misconduct resulting in loss of enjoyment of life, medical expenses, and physical assault. Compl. ¶¶ 277, 238, 266, and 283.

116.   While Defendant disputes the allegations set forth in the Complaint, including Plaintiffs' claims for damages, the amount in controversy clearly exceeds the $75,000 jurisdictional threshold for diversity jurisdiction.

WHEREFORE, Defendant respectfully requests that the United States District Court for the Middle District of Florida, Tampa Division, accept the removal of this action from the Circuit Court and direct that the Circuit Court of the Twelfth Judicial Circuit in and for Sarasota County, Florida, has no further jurisdiction of this matter unless and until this case is remanded.

DATED this 26th day of July, 2022.

Respectfully submitted,

s/ Mendy Halberstam
Mendy Halberstam, Esq.
Florida Bar No. 68999
Email:
mendy.halberstam@jacksonlewis.com
Allison Gluvna Folk, Esq.
Florida Bar No. 041075
Email: allison.folk@jacksonlewis.com
JACKSON LEWIS P.C.
2 S. Biscayne Blvd, Suite 350
Miami, FL 33131
Tel: (305) 577-7600
Fax: (305) 373-4466

and

B. Tyler White, Esq.
Florida Bar No. 038213
Email: tyler.white@jacksonlewis.com
Todd R. Dobry, Esq.
Florida Bar No. 109081
Email: todd.dobry@jacksonlewis.com
Catherine E. Barton, Esq.
Florida bar No. 1032071
cate.barton@jacksonlewis.com
JACKSON LEWIS P.C.
501 Riverside Avenue, Suite 902
Jacksonville, FL 32202
P 904-638-2655

Counsel for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 26th day of July 2022, a true and correct copy of the foregoing was filed using the CM/ECF System which will automatically give notice to: Starlett M. Massey, Esq. (smassey@masseylawgrouppa.com; service@masseylawgrouppa.com).

*s/ Mendy Halberstam*
Mendy Halberstam (FBN 68999)
JACKSON LEWIS P.C.
2 S. Biscayne Blvd, Suite 350
Miami, FL 33131
mendy.halberstam@jacksonlewis.com
Tel: (305) 577-7600
Fax: (305) 373-4466

*Counsel for Defendant*

63