## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MEGAN ROSE RUIZ, LAUREN
WILSON, LYRA WILSON, CAITLIN
HENNING, NICKOLAS BERGER,
ROXEANNE ZINSSER, DYLAN
BONNER and BRYAN PAUL
PATTERSON,

     Plaintiffs,

v.                                                    Case No: 8:22-cv-1684-CEH-MRM

RINGLING COLLEGE OF ART
AND DESIGN, INC.,

     Defendant.

_____

### ORDER

This matter comes before the Court on Plaintiffs', Megan Ruiz, *et al.*, Motion

to Remand (Doc. 20).   Defendant Ringling College of Art and Design, Inc.

("Defendant" or "Ringling") removed this action from state court pursuant to 28

U.S.C. § 1447, asserting that subject matter jurisdiction exists based upon diversity of

citizenship and a federal question (Doc. 1).   Plaintiffs now move to remand, arguing

that Defendant has not established either type of jurisdiction (Doc. 20).   Defendant

has responded in opposition (Doc. 24).

Having reviewed the parties' submissions and being fully advised in the

premises, the Court will grant in part the Motion to Remand because Defendant has

not established that the case arises under federal law, and has not proved its theory of

fraudulent joinder by clear and convincing evidence for the purpose of diversity jurisdiction. Plaintiffs' request for attorney's fees and costs, however, is due to be denied.

## I. BACKGROUND

Plaintiffs are a group of eight former students or student-employees of Defendant Ringling. On June 21, 2022, they filed a complaint in state court alleging various state law causes of action against Defendant either jointly or individually. Doc. 11-1. Each Plaintiff alleges that one or more adverse experiences occurred during their time at Ringling that involved Christopher Shaffer, former Associate Dean of Students for Residence Life, either alone or in combination with other Ringling employees. Their accounts range temporally from 2008 to 2020, and their alleged experiences vary significantly. Primarily, they allege either an inadequate response to their report of student-on-student misconduct, or discrimination due to their sexual orientation, income, or disability. Based on these experiences, they contend that Ringling misrepresented the safety of its campus in its Title IX reporting and engaged in policies and practices that impeded reports of student-on-student misconduct, fraudulently inducing them to matriculate (Counts I and II); that Ringling negligently failed to supervise Shaffer when he engaged in discrimination, retaliation, or violations of the Americans with Disabilities Act ("ADA") and Florida Civil Rights Act ("FCRA") (Counts III through VII); and that Ringling breached its implied contract with and fiduciary duty to students when it failed to abide by its policies against discrimination and its Title IX reporting obligations (Counts VIII and IX).

Defendant removed this action on July 26, 2022. Doc. 1. In its Notice of Removal, Defendant argues there are two bases for subject matter jurisdiction in federal court. First, it contends that there is jurisdiction based on a federal question. Although Plaintiffs allege what are ostensibly state law causes of action, their claims are explicitly and repeatedly predicated on violations of federal law, particularly Title IX and the ADA. *Id.* at 2, 8-25. Defendant asserts that the claims "are in fact federal claims masquerading as state law claims," and that the Plaintiffs' artful pleading cannot disguise the federal questions being raised. *Id.* at 2. Second, Defendant argues that the Court also has diversity jurisdiction. Two of the Plaintiffs, Caitlin Henning and Nickolas Berger, are citizens of Florida, as is Defendant, while the other Plaintiffs are domiciled elsewhere. But Defendant contends that the claims of all eight Plaintiffs, including Henning and Berger, are improperly and fraudulently joined "solely to avoid diversity" jurisdiction. *Id.* at 3, 25-39. Under the doctrine of fraudulent misjoinder, Defendant argues that the Court may disregard the citizenship of the non-diverse Plaintiffs and find that diversity jurisdiction exists. *Id.*

Soon after removing the case, Defendant filed a Motion to Sever and Dismiss (Doc. 17), in which it argues that all Plaintiffs' claims are misjoined and due to be dismissed on various grounds, including the statute of limitations and the failure to state a claim. Plaintiffs have responded in opposition, and Defendant has replied (Docs. 26, 29). Concurrently, Plaintiffs filed a Motion to Remand in which they dispute Defendants' arguments that federal jurisdiction exists on either diversity or federal question grounds (Doc. 20). They also assert that the Motion to Remand must

be decided before the Court may consider the Motion to Sever and Dismiss. *Id.* at 22-23; Doc. 26 at 1-2.  Defendant has responded in opposition to the Motion to Remand, elaborating on the arguments in its Notice of Removal. Doc. 24.

## II.    LEGAL STANDARD

"The jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case, and cannot be waived or otherwise conferred upon the court by the parties." *Jackson v. Seabord Coast Line R.R. Co.*, 678 F.2d 992, 1000 (11th Cir. 1982).  The bases for federal courts' subject matter jurisdiction are confined, as federal courts are "empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution or otherwise authorized by Congress." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994).

Congress granted district courts original subject matter jurisdiction over civil actions sitting in diversity. 28 U.S.C. § 1332.  Diversity jurisdiction exists where a lawsuit is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs. *Id.* § 1332(a)(1).  District courts also have original jurisdiction over all cases arising under federal law. 28 U.S.C. § 1331.  It is the burden of the party seeking federal jurisdiction to establish that it exists by a preponderance of the evidence. *See McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002).

A defendant may remove a civil action from state court to the district court of the United States for the district and division within which the action pends, as long

4

as the district court has subject matter jurisdiction. 28 U.S.C. § 1441(a).  However, since removal "raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999).  "Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *Id.*

### III.   DISCUSSION

Although two motions are pending before this Court, the Court must resolve the Motion to Remand before considering the merits of Defendant's Motion to Sever and Dismiss.  It is well-settled that a federal court must examine its jurisdiction before proceeding to the merits of an action. *See*, *e.g.*, *Univ. of South Ala.*, 168 F.3d at 410-11 ("[W]hen an action is removed from state court, the district court must first determine whether it has original jurisdiction over the plaintiff's claims. [ ] If there is jurisdiction, then removal is appropriate and the court may proceed to the merits of the case. [ ] Moreover, a federal court must remand for lack of subject matter jurisdiction notwithstanding the presence of other motions pending before the Court.").  Defendant asks the Court to consider its Motion to Sever and Dismiss contemporaneously with the Motion to Remand because the issues they raise are interrelated. Doc. 24 at 20-21.  But Defendant has provided no authority demonstrating that the Court may consider the *merits* of the Motion to Sever and Dismiss before it determines whether it has jurisdiction over this action.  Accordingly, the Court will consider the issues raised in the Motion to Sever and Dismiss only to the extent that they bear on the jurisdictional question.

Defendant has raised two grounds for federal jurisdiction.  Each will be addressed in turn.

## A. Federal Question Jurisdiction

Defendant first asserts that federal question jurisdiction exists pursuant to 28 U.S.C. § 1331.  Although all Plaintiffs' claims are brought under state law, Defendant contends that Plaintiffs "disguised [ ] federal claims as state law claims" "in a calculated effort to evade federal court." Doc. 24 at 1.  It argues removal was proper because each of the claims actually arises under federal law.

Federal district courts have original subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  To determine whether such jurisdiction exists, "a court must look to the well-pleaded complaint alone.  Thus, to meet their burden, the defendants must show that the plaintiffs' complaint, as it existed at the time of removal, provides an adequate basis for the exercise of federal jurisdiction." *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1295 (11th Cir. 2008) (citation omitted).

### 1)  *"Arising Under" Federal Question Jurisdiction*

As a general rule, a case "arises under" federal law only if it is federal law that creates the cause of action. *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996) (citation omitted).  Only a "special and small category" of cases will arise under federal law where a claim finds its origins in state law. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006).  Wary of "herald[ing] a potentially enormous shift

of traditionally state cases into federal courts," courts have declined to interpret this category broadly. *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 319 (2005). Even the fact that a federal issue is an element of a state law claim will not "automatically confer federal-question jurisdiction." *Jairath v. Dyer*, 154 F.3d 1280, 1282 (11th Cir. 1998), quoting *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 813 (1986). Federal jurisdiction over a state law claim will lie only in the "slim category" of cases in which the federal issue is: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013).

The Eleventh Circuit undertook a detailed analysis of all four of these prongs in *Adventure Outdoors*, 552 F.3d 1290. In that case, a group of gun dealers in Georgia sued New York investigators who had held a press conference in which they claimed the gun dealers were violating federal law. *Id.* at 1293. The lawsuit alleged defamation and negligence under state law, based on the plaintiffs' allegation that they had not violated federal law. *Id.* at 1294. The defendants removed, asserting that the claims turned on a question of federal law and therefore arose under it. *Id.* The Eleventh Circuit disagreed. Addressing the negligence claims first, the court applied the elements of negligence to the corresponding factual allegations—that the defendants had failed to properly investigate plaintiffs' alleged violations of federal law—to determine whether the claim would require resolution of an issue of federal law. *Id.* at 1297. But it could not identify any conceivable duty the defendants owed to the

plaintiffs that arose under federal law, and found that the question of whether the defendants had committed the alleged breach was a factual one that could be resolved without even applying federal law. *Id.* at 1297-98. Accordingly, the court concluded the negligence claims did not necessarily raise an issue of federal law. *Id.*; *see also Bollea v. Clem*, 937 F.Supp.2d 1344, 1352-53 (M.D. Fla. 2013) (Whittemore, J.) (plaintiff's "passing references to his right to privacy do not 'necessarily raise' provisions of the United States Constitution.").

On the other hand, the *Adventure Outdoors* court found that the defamation claims necessarily raised a question of federal law that was actually disputed, because they required a determination of the falsity of the statement alleged to be defamatory: that the plaintiffs broke federal law. 552 F.3d at 1298. Nonetheless, it found that these claims still did not satisfy the *Gunn* analysis, because the federal issue was not substantial. *Id.* at 1299. Unlike in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 319 (2005), in which the Supreme Court had found federal question jurisdiction over an ostensibly state law claim, the parties in *Adventure Outdoors* were primarily contesting factual issues rather than a purely legal question. 552 F.3d at 1299-1300. Although the jury would need to apply federal law to reach its decision, the meaning of that law was not unclear, and federal courts would not be bound by the state court's interpretation of it. *Id.* As a result, the court found federal question jurisdiction lacking as to all of the claims.

The Supreme Court rejected federal jurisdiction for similar reasons in *Gunn*, 568 U.S. 251.  The plaintiff brought a state law claim of legal malpractice based on an alleged error in a patent case. *Id.* at 255.  "Although such cases may necessarily raise disputed questions of patent law," which is an exclusively federal domain, the Court held that they are "by their nature unlikely to have the sort of significance for the federal system necessary to establish jurisdiction." *Id.* at 259.  The Court emphasized that "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim 'necessarily raises' a disputed federal issue[.]  The substantiality inquiry [] looks instead to the importance of the issue to the federal system as a whole." *Id.* at 260 (emphasis in original), citing *Grable*, 545 U.S. 308.

As Judge Whittemore summarized in *Bollea v. Clem*,

> Issues that will "change the real-world result" for future cases and future litigants are substantial. [*Gunn*, 568 U.S. at 261.]  The two paradigmatic examples of "substantial" federal issues cited in *Gunn* involved the United States Government's "direct interest in the availability of a federal forum to vindicate its own administrative action," and the "constitutional validity of an act of Congress which is directly drawn in question." *Grable,* 545 U.S. at 315 [ ]; *Smith v. Kansas City Title & Trust Co.,* 255 U.S. 180, 201, [ ] (1921); *see Gunn,* 133 S.Ct. at 1066.  Those issues of law were "substantial" because they "could be settled once and for all and thereafter would govern numerous" cases. *Empire Healthchoice Assur., Inc. v. McVeigh,* 547 U.S. 677, 700, [ ] (2006).

937 F.Supp.2d at 1353; *see also Grable*, 545 U.S. 308 (federal question jurisdiction existed where the state claim centered on the action of a federal agency and its

compatibility with a federal tax statute whose meaning was in dispute, which was an important issue of federal law that sensibly belonged in federal court).

Applying these concepts, the court granted a motion to remand in *Perez v. Jacobsen Mf'g, Inc.*, 8:16-cv-830-JSM-AAS, 2016 WL 3344671 (M.D. Fla. 2016) (Moody, J.). The plaintiff alleged a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") based on the sale of an allegedly defective manufactured home; he claimed the home was defective because, *inter alia*, its vinyl siding failed to comply with federal regulations. *Id.* at *1. The court first found that the claim raised a disputed federal issue because plaintiff was required to establish noncompliance with the federal regulations in order to prove a violation of FDUTPA. *Id.* at *2. However, the court concluded the federal issue was not substantial because it was not the central issue in the case and the parties' disputes were largely factual. *Id.* at *3. Although they were "hotly contest[ing]" the meaning of the federal regulation's terms, "the application of these terms to the materials [defendant] used on the subject homes involves a highly factual analysis that does not merit federal question jurisdiction." *Id.* Because the plaintiff's claim did not "hinge on the interpretation of a single federal statute," and its outcome "would necessarily turn on the particular facts of the case," a federal issue would not be "'settled once and for all' with a decision by this Court," and remand was necessary. *Id.* at *4, quoting *Empire Healthchoice*, 547 U.S. at 701.

Similarly, in *Meyer v. Health Management Associates, Inc.*, 841 F.Supp.2d 1262 (S.D. Fla. 2012), the Southern District of Florida remanded a suit brought under

Florida's Whistleblower Act, which requires proof that a plaintiff disclosed or threatened to disclose a violation of law; the plaintiff alleged he was fired because he threatened to disclose defendant's breach of federal Medicare law. *Id.* at 1268. Although the question of whether the defendant violated federal law was disputed in the case and necessary to its resolution, the court found that it was not substantial. *Id.* The questions involved were fact-intensive and specific to the case, and resolving the federal issue would not necessarily dispose of the case. *Id.* at 1269-70. The court also emphasized that a state court adjudication would not have precedential effect in the federal system, which was just as well: "To the extent there is some difficult issue of Medicare law wrapped up in this case, it ought not be decided, for all time, incidental to a state law retaliation claim." *Id.* at 1270; *see also Salav v. Boyland Auto Orlando, LLC*, 6:07-cv-1892-PCF-GJK, 2008 WL 254127, *4 (M.D. Fla. Jan. 29, 2008) (remanding case where plaintiff alleged defendant violated Florida statutes that required compliance with federal law; finding that the "allegations of the Complaint merely require applying of federal standards to determine if state law was violated and does not require the Court to interpret federal law").

### 2) *This Action Does Not Arise Under Federal Law*

Here, Plaintiffs move for remand because all their claims are asserted under state law; they argue that the mere mention of federal laws does not create federal question jurisdiction where no issue of law is raised as to the federal laws referenced. Doc. 20 at 7-14. Arguing against remand, Defendant asserts that all four *Gunn* requirements have been satisfied. Doc. 24 at 4. It emphasizes that the complaint

contains numerous references to federal law and that it relies particularly on violations of Title IX's sexual assault reporting requirements and the anti-discrimination provisions of Title IX and the ADA. *Id.* at 4-6. Defendant further argues that the federal claims necessarily involve analysis of and decisions based on federal laws. *Id.* at 9. Further, the resolution of these claims will impact future decisions regarding Title IX's legal obligations or the various requirements of Title IX or the ADA. *Id.* at 7, 9-10.

The Court concludes, upon review of the face of the complaint,[1] that none of Plaintiffs' claims arise under federal law because none satisfy the *Grable/Gunn* requirements. Each count will be addressed in turn.

### a. *Counts I and II: Constructive Fraud*

Counts I and II allege constructive fraud. Constructive fraud occurs when one party abuses or takes unconscionable advantage of a fiduciary or confidential relationship. *See Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F.Supp.2d 1170, 1179 (M.D. Fla. 2005); *Rogers v. Mitzi*, 584 So.2d 1092, 1094 (Fla. 5th DCA

---

[1] Contrary to the contention in Defendant's Notice of Removal, Doc. 1 at 22-23, the Court cannot consider extrinsic evidence when determining whether federal question jurisdiction exists. *See Adventure Outdoors*, 552 F.3d at 1295; *see also Blab T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc.*, 182 F.3d 851, 854 (11th Cir. 1999) ("A case thus may be removed based on federal question jurisdiction 'only when the plaintiff's statement of his own cause of action shows that it is based' on federal law"), quoting *Louisville & Nasville R.R. v. Mottley*, 211 U.S. 149, 152 (1908); *Kemp v. Int'l Business Machine Corp.*, 109 F.3d 708, 712 (11th Cir. 1997) ("A case does not arise under federal law unless a federal question is presented on the face of plaintiff's complaint"). Defendant's reliance on a case involving diversity jurisdiction, which is governed by a different standard, is unavailing. Doc. 1 at 22 n.3. The Court will therefore disregard the Pre-Suit Demand Letter for the purpose of this analysis.

1991); *see also Douglas v. Ogle*, 80 Fla. 42, 45 (Fla. 1920) ("Constructive fraud is simply a term applied to a great variety of transactions which equity regards as wrongful, to which it attributes the same or similar effects as those which follow from actual fraud, and for which it gives the same or similar relief as that granted in cases of real fraud.") (quotation omitted, modifications accepted). Constructive fraud may take many forms, including misrepresentation, concealment, or taking improper advantage of a fiduciary relationship at the expense of the confiding party. *Levy v. Levy*, 862 So.2d 48, 53 (Fla. 3d DCA 2003).

Plaintiffs contend that they, as students, were in a fiduciary relationship with Ringling. Doc. 11-1 ¶¶ 47-50. In Count I, several Plaintiffs allege that Defendant misrepresented the safety of its campus, inducing them to matriculate and pay for tuition and other services, and failed to properly disclose truthful information about its safety. *Id.* ¶¶ 197-198. They were harmed when their own claims went unreported or unresolved as a result of Defendant's tactics, through Shaffer, which were intended to prevent students from reporting such incidents. *Id.* ¶¶ 198-201. In Count II, Henning alleges that Defendant misrepresented that its campus was a safe environment for students with disabilities, inducing her to matriculate and pay for tuition and other services, and failed to properly disclose truthful information about its safety for students with disabilities. *Id.* ¶¶ 203-206. She was harmed when her request for a reasonable accommodation was unresolved and retaliated against. *Id.* ¶¶ 206-208.

Neither count explicitly references federal law. Defendant contends, however, that Count I contains an (implied) allegation that Defendant failed to comply with its

Title IX obligations to report and disclose instances of student-on-student misconduct. Doc. 1 at 19, Doc. 24 at 5.  As to Count II, Defendant points out that it incorporates factual allegations that Henning is a qualified individual with a disability under the ADA and FCRA and that Defendant failed to provide her with a reasonable accommodation. Doc. 11-1 ¶¶ 112, 125, 130, 133.  Defendant therefore argues that Count II directly alleges a claim, and otherwise raises necessary federal questions, arising under and pertaining to the ADA. Doc. 1 at 8.

However, the Court finds that resolution of a federal question is not necessary for either count of constructive fraud.  It is certainly not necessary to the elements of fiduciary relationship or injury.  With respect to the element of abuse or unconscionable advantage, the heart of Plaintiffs' claims is Defendant's misrepresentations or intentional concealments about its campus safety or the environment it offers to individuals with disabilities.  Whether these claims were false or resulted from knowing omissions is a factual question that does not turn on an analysis of Title IX or the ADA.  Although those statutes may provide a context in which to determine whether abuse or unconscionable advantage occurred, Defendant's compliance or lack of compliance with them would not be dispositive of the claims. *See Adventure Outdoors*, 552 F.3d at 1297-98.

Even if Counts I and II necessarily raised a contested federal issue, however, the Court would find that the issue is not substantial.  After all, it is not enough for a federal issue to be an element of the claim, *Jairath*, 154 F.3d at 1282, or for the federal issue to be significant to the parties or to resolution of their claims. *Gunn*, 568 U.S. at

260. Rather, it must be significant to the federal system as a whole. *Id.* Defendant has failed to demonstrate that the meaning of a federal statute is actually in dispute in these counts; rather, it is the *facts* that the parties vehemently contest. *See Meyer*, 841 F.Supp.2d at 1269-70; *Adventure Outdoors*, 552 F.3d at 1299. State courts are "generally presumed competent to interpret and apply federal law." *Id.* at 1301 (citation omitted). To the extent any interpretation of Title IX or the ADA is required to resolve these counts, the state court is amply capable of doing so. *See Perez*, 2016 WL 3344671 at *3. The Court concludes that the issues of the constructive fraud counts are largely factual and specific to the parties, and do not raise any substantial federal interest. Therefore, they do not arise under federal law pursuant to 28 U.S.C. § 1332.

> ### b.  *Counts III, IV, V, VI, VII: Negligent Supervision and Retention*

Negligent supervision and retention occurs when, during the course of employment, "the employer becomes aware or should have become aware of problems with an employee that indicates his unfitness" and it "fails to take further action such as investigation, discharge, or reassignment." *Martinez v. Pavex Corp.*, 422 F.Supp.2d 1284, 1298 (M.D. Fla. 2006). This cause of action requires an injury resulting from a tort that is recognized under common law. *Id.*; *see also Scelta v. Delicatessen Support Servs., Inc.*, 57 F.Supp.2d 1327, 1348 (M.D. Fla. 1999) ("the underlying wrong allegedly committed by an employee in a negligent supervision or negligent retention claim must be based on an injury resulting from a tort which is recognized under common law.").

In Counts V, VI, and VII, Plaintiffs allege that actions by Shaffer violated the ADA and the FCRA, and that Ringling is liable for Shaffer's conduct. Doc. 11-1 at ¶¶ 230, 241, 252. Because the underlying tort alleged for these counts is a violation of the ADA and the FCRA,[2] whether Shaffer violated the ADA is a necessary and disputed federal question in each claim. But this question, too, will be fact-intensive to answer. Moreover, it is far from the only disputed issue; the parties will also contest whether Shaffer's actions violated the FCRA, whether Ringling was aware or should have been aware of his actions, and whether Ringling failed to take appropriate action. As in *Perez*, these factors counsel against a finding of federal question jurisdiction. *See* 2016 WL 3344671 at *3. Defendant has also failed to establish that the federal issues in these counts are substantial to the federal system as a whole. Although Defendant asserts that the resolution of the federal issues in this case "will govern and impact other cases interpreting these exclusively federal laws," Doc. 24 at 7, a state court decision would not have any precedential value to future federal decisions. And, just as in *Meyer*, if a difficult issue of Title IX or ADA law does arise in this case, perhaps "it ought not to be decided, for all time, incidental to a state law [negligent supervision] claim." *See* 841 F.Supp.2d at 1270. A substantial issue of federal law is not raised where a court is called upon to "[m]erely…apply[ ] federal standards" as one step in

---

[2] Whether these counts successfully state a claim for negligent supervision and retention is a question this Court does not reach at the jurisdictional stage. *See Gutman v. Quest Diagnostics Clincal Laboratories, Inc.*, 707 F.Supp.2d 1327, 1332 (S.D. Fla. 2010) (finding plaintiff failed to state a claim for negligent supervision where the underlying injury resulted from a violation of the ADA, "which is not a recognized common law tort" in Florida).

its determination of whether Defendant negligently supervised its employee. *See Salav*, 2008 WL 254127 at *4.  These counts do not survive a *Gunn* analysis.

Count III alleges negligent supervision based on a variety of purported failures related to Shaffer's treatment of Ruiz, including but not limited to failing to ensure that he "complied with Florida and federal law," and continuing to employ him after he retaliated against Ruiz by filing a lawsuit.  Imbedded in this claim is a violation of an unspecified federal law, but the claim is so broadly written that it could be resolved without any finding of a violation of federal law.  Passing references to federal law do not necessarily raise a federal issue. *Bollea*, 937 F.Supp.2d at 1352-53.  Moreover, as in Counts V, VI, and VII, resolution of any federal issue would be highly fact-intensive and would not resolve the claim.  Therefore, a federal issue is not substantial in any event.

Count IV, the last count of negligent supervision and retention, is a sweeping claim by the victims of student-on-student misconduct who allege that Ringling failed to prevent or take any action against a variety of actions attributed to Shaffer.  The actions include concealment of reports of student-on-student misconduct, harassment of students who made such reports, and discrimination based on students' gender, race, sexual orientation, or disability.  As with Count III, although a finding that Shaffer violated federal law could establish one element of this claim, the claim is broad enough to be resolved without contesting a federal issue at all.  Therefore, it does not necessarily raise one.  In any event, the federal issue is not substantial for the

same reasons as Counts III, V, VI, and VII.  None of the counts for negligent supervision and retention create federal question jurisdiction.

     *c.*   *Count VIII: Breach of Implied Contract*

In Florida, a claim for breach of contract requires a valid contract, a material breach, and damages. *Brush v. Miami Beach Healthcare Grp., Ltd.*, 238 F.Supp.3d 1359, 1366 (S.D. Fla. 2017).  A contract may be implied, rather than express, where it is based on a tacit promise or unspoken conduct that indicates both parties' agreement and understanding. *See id.* at 1368.

In Count VIII, most Plaintiffs allege that they entered into a contract of enrollment with Ringling based upon Ringling's written policies and procedures. Doc. 11-1 ¶ 262.  The policies and procedures included its core values of respecting diversity and equity, a promise to provide a supportive and caring environment, and policies prohibiting discrimination and harassment based on students' membership in a protected class. *Id.*  Plaintiffs allege Defendant breached the contract through its deliberate indifference of Shaffer's and other employees' misconduct, which included discrimination, mishandling of crime reports, and "inappropriate transmission of students' private information, including information protected by HIPAA and [the Family Educational Rights and Privacy Act ("FERPA")]." *Id.* ¶ 263.

While not directly stated, this count implies that Shaffer's alleged violation of Title IX or ADA procedures constituted a breach of contract by Ringling.  But because Ringling's written policy also prohibited discrimination, a jury could find that Ringling is liable for breaching the contract as long as it found that an employee engaged in

"discrimination," irrespective of any violation of federal law.  Unstated allusions to Title IX and the ADA do not necessarily raise federal issues.  Nor does the claim's express reference to HIPAA and FERPA indicate the existence of a federal issue. Neither statute creates a private right of action,[3] a factor the Supreme Court and the Eleventh Circuit have noted is relevant when determining that the congressionally-mandated balance between federal and state courts does not support a finding of jurisdiction. *See Merrell Dow*, 478 U.S. at 814; *Adventure Outdoors*, 552 F.3d at 1302-03. To the extent Plaintiff seeks to prove that Ringling breached its implied contract with students through Shaffer's alleged violation of confidentiality statutes, the question of whether he violated the statutes will be both fact-intensive and dwarfed by the other disputed issues in the claim.  Finally, the Court observes that this count is also fact-intensive and does not raise any substantial issue of federal law that requires resolution in federal court.  It does not create federal question jurisdiction.

  d. *Count IX: Breach of Fiduciary Duty*

  The final count alleges a breach of fiduciary duty, which requires proof of the existence of a fiduciary duty, a breach, and resulting damages. *Lesti v. Wells Fargo Bank, N.A.*, 960 F.Supp.2d 1311, 1323.  Most of the Plaintiffs assert that Defendant, as their fiduciary, had a duty to provide them with an environment free of discrimination and harassment, and to "ensure that the campus environment was safe pursuant to their

---

[3] *See, e.g.*, *Sneed v. Pan American Hosp.*, 370 F. App'x 47, 50 (11th Cir. 2010) ("We decline to hold that HIPAA creates a private cause of action"); *Gonzaga University v. Doe*, 536 U.S. 273 (2002) (holding that FERPA does not create a private cause of action).

representations." Doc. 11-1 ¶¶ 275, 276.  Defendant breached its duty to warn them of unsafe conditions, to protect them from known hazards, and to report incidences of student-on-student misconduct pursuant to state and Federal law. *Id.* ¶ 281.  To cause these breaches, Plaintiffs allege that Shaffer engaged in a pattern of dissuading students from making reports and failed to follow appropriate procedures for documenting the reports that were made. *Id.* ¶¶ 278-280.  The latter action is an implicit reference to Title IX procedures.  Here too, however, because the count encompasses more conduct than failing to abide by federal law, it does not necessarily raise a federal issue.  In any event, the issue is not substantial for the same reasons as the other counts.  Count IX does not arise under federal law.

> e. *Relevance of Deliberate Indifference Standard*

Defendant argues that Plaintiff's allegations that Ringling acted with "deliberate indifference" with respect to its reporting obligations and the handling of student-on-student misconduct demonstrates the existence of a federal issue, because this standard is part of the legal framework governing Title IX claims. Doc. 24 at 5.  Defendant characterizes the deliberate indifference standard as "*exclusive*" to Title IX claims, and notes that this standard is not applied to any similar claim under state law. *Id.* (emphasis in original).  But Defendant is incorrect that the standard of deliberate indifference is "exclusive" to Title IX claims; in fact, it is a standard of proof that is used in a variety of contexts. *See*, *e.g.*, *Farmer v. Brennan*, 511 U.S. 825 (1994) (discussing deliberate indifference standard in the context of an Eighth Amendment violation).  Moreover, the term's use in the Complaint is not limited to the claims that

obliquely reference Title IX.  On the contrary, Plaintiffs most often use the term when alleging negligent supervision with respect to Shaffer's purported discrimination against individuals with disabilities. *See* Doc. 11-1 ¶¶ 234, 236, 244, 246, 255, 257.  In these counts the term is found within the phrase "actual knowledge of, and/or was deliberately indifferent to," *Id.* ¶¶ 234, 244, 255, which closely tracks the element of negligent supervision and retention that requires the defendant employer to have "become[] aware or should have become aware of problems with an employee that indicates his unfitness" but "fail[] to take further action[.]" *Martinez*, 422 F.Supp.2d at 1298.  Plaintiffs also use the deliberate indifference standard in allegations relating to all forms of discrimination, not just those that fall under Title IX. *See id.* ¶¶ 223, 263.  Their use of this phrase does not indicate that Plaintiffs are pleading a Title IX violation under federal law.

The Court concludes that none of the counts survive a *Gunn* analysis because they do not fit within the "slim category" of state claims that arise under federal law. *Gunn*, 568 U.S. at 258 .  If, as Defendant argues, Florida state law does not create any right to the relief Plaintiffs seek in their state law claims, Doc. 24 at 8, then the claims may be dismissed in state court.  However, they are not turned into federal issues merely because they may be better pleaded as such.  Plaintiffs are the master of their complaint and may choose to avoid federal jurisdiction by eschewing any federal claims they might have brought. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 395 (1987) (noting plaintiffs "could have brought suit" under a federal law; "[a]s masters of the complaint, however, they chose not to do so.").  Nor, under well-settled

precedent, does the need to consider federal law to resolve some of the claims create a federal question under 28 U.S.C. § 1332.  The Court does not have federal question jurisdiction.

## B. Diversity Jurisdiction

Defendant also asserts that subject matter jurisdiction exists based upon diversity of citizenship.  Two Plaintiffs, Henning and Berger, are non-diverse from Defendant because they are all citizens of Florida.  Defendant argues that Henning and Berger were fraudulently joined to the action in order to defeat diversity jurisdiction in federal court. Doc. 24 at 11-21.  The parties agree that the amount in controversy exceeds the jurisdictional threshold. *See* Doc. 20 at 16 n.1.  They dispute whether Henning's and Berger's citizenship may be considered in determining whether diversity jurisdiction exists.

The doctrine of "fraudulent joinder" provides that diversity jurisdiction may be found to exist despite the presence of one or more non-diverse parties, if the defendant establishes that plaintiff has added the non-diverse party solely to defeat federal diversity jurisdiction. *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006).  The Eleventh Circuit recognizes three types of fraudulent joinder: (1) if there is no possibility the plaintiff can prove a cause of action against the resident defendant;[4] (2) if there has been outright fraud by the plaintiff in pleading jurisdictional

---

[4] Most cases assessing fraudulent joinder involve the allegation that a non-diverse defendant was fraudulently joined, rather than a non-diverse plaintiff.  The Eleventh Circuit has not ruled on the question of whether the doctrine extends to a fraudulently joined plaintiff. Although some other courts in this Circuit have applied the doctrine to the joinder of

facts; or (3) "fraudulent misjoinder," in which an improper joinder is "so egregious" as to be fraudulent. *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996),[5] abrogated on other grounds by *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). A defendant seeking to prove fraudulent joinder bears a "heavy" burden: he must prove one of these circumstances by clear and convincing evidence. *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997); *Henderson*, 454 F.3d at 1281.

### 1) *The Law of Fraudulent Misjoinder*

With respect to the third type of fraudulent joinder, fraudulent *mis*joinder, the Eleventh Circuit has made clear that not every misjoinder is fraudulent. *Tapscott*, 77 F.3d at 1360. Rather, the misjoinder must be "egregious" to fall within this doctrine.

---

plaintiffs, they have done so without analysis or discussion. *See Breland Homes, LLC v. Wrigley*, 5:18cv1350-CLS, 2019 WL 1466239, *9 (N.D. Ala. April 3, 2019) (collecting cases). On the other hand, courts that have analyzed the question have concluded, after reviewing decisions from district courts in other Circuits, that the doctrine should not apply to a fraudulently joined plaintiff. *Id.*; *Beasley Forest Prod., Inc. v. N. Clearing, Inc.*, 515 F.Supp.3d 1367 (S.D. Ga. 2021); *see also Johnston Industries, Inc. v. Milliken & Co.*, 45 F.Supp.2d 1308, 1312 (M.D. Ala. 1999). These courts have reasoned that a defendant who believes plaintiffs' claims are fraudulently joined together has more opportunity to resolve the issue in state court before attempting to remove the action, compared to a defendant who seeks to challenge the fraudulent joinder of a nondiverse codefendant. *See Breland*, 2019 WL 1466239 at *11. Moreover, absent a clear directive from the Eleventh Circuit, the courts preferred to address the legal ambiguity in a manner that would "not unnecessarily expand the exercise of federal jurisdiction" and "resolve any doubts in favor of remand." *Breland*, 2019 WL 1466239 at *10. Here, however, because Plaintiffs do not object to the application of the doctrine on those grounds, the Court will assume, *arguendo*, that it does apply to misjoinder of plaintiffs.

[5] No other circuit court has expressly adopted the doctrine of fraudulent misjoinder. *See, e.g., Cal. Dump Truck Owners Ass'n v. Cummins Engine Co., Inc.*, 24 F. App'x 727, 729 (9th Cir. 2001) (assuming, without deciding, that the circuit would adopt the doctrine); *Lafalier v. State Farm Fire and Cas. Co.*, 391 F. App'x 732, 739 (10th Cir. 2010) (declining to decide whether to adopt it); *In re Prempro Products Liability Litigation*, 591 F.3d 613, 622 (8th Cir. 2010) (same); *Williams v. Homeland Ins. Co. of N.Y.*, 18 F.4th 806 (5th Cir. 2021) (affirmatively rejecting the doctrine).

*Id.*   A court must first determine whether a joinder satisfies the permissive joinder requirements of Rule 20(a).[6] *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287-88 (11th Cir. 1998), overruled on other grounds by *Cohen*, 204 F.3d 1069.   "If permissive joinder is appropriate, then there obviously can be no fraudulent joinder[.]" *Luke v. O'Hearn*, 4:13-cv-535 (CDL), 2014 WL 1153786, *2 (M.D. Ga. March 20, 2014).

Under Rule 20(a)(1), joinder of plaintiffs is permitted if: "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1).   To determine whether claims arise from "the same transaction, occurrence, or series of transactions or occurrences," the Eleventh Circuit applies the "logical relationship" test. *See Smith v. Trans-Siberian Orchestra*, 728 F.Supp.2d 1315, 1319 (M.D. Fla. 2010), citing *Republic Health Corp. v. Lifemark Hospitals of Fla.*, 755 F.2d

---

[6] Some courts have observed that the law is "unsettled [as to] whether courts should look to the rules of joinder in the state court or in the Federal Rules of Civil Procedure for purposes of the fraudulent misjoinder analysis." *Campbell v. Quixtar, Inc.*, No. CIVA-208-CV-0045-RWS, 2008 WL 2477454, *7 n.2 (N.D. Ga. June 16, 2008); *Asher v. Minnesota Mining & Mfg. Co.*, No. CIV.A. 04CV522KKC, 2005 WL 1593941, *6 (E.D. Ky. June 30, 2005) (citing *Tapscott* for the doctrine of fraudulent misjoinder, but finding that most courts apply the state law of joinder to this analysis); *see also Razorback Funding, LLC v. Fed. Ins. Co.*, No. 10-60171-CIV, 2010 WL 11575268, *7-8 n.9 (S.D. Fla. Sept. 7, 2010) (noting it need not determine whether the Florida or federal rule of joinder should be used because the result was the same under both).   It would be logical to apply the state rule of joinder, because the question to be answered is whether the parties were fraudulently joined in state court before the action was removed.   However, this Court acknowledges that the Eleventh Circuit applied the federal rule of joinder in *Tapscott*, as have most other district courts in this Circuit.   As such, this Court will apply Rule 20(a) rather than Florida's rule of joinder.

1453, 1455 (11th Cir. 1985). "Under this test, a logical relationship exists if the claims rest on the same set of facts or the facts on which one claim rests activate additional legal rights supporting the other claim." *Id.* (citing *Republic Health,* 755 F.2d at 1455). "In other words, there is a logical relationship when the same operative facts serve as the basis of both claims." *Bollea*, 937 F.Supp.2d at 1350 (quotation omitted). The joinder rules are construed generously toward "entertaining the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966). Accordingly, "[t]he logical relationship standard is a loose one that permits a broad realistic interpretation in the interest of avoiding a multiplicity of suits." *Bollea*, 937 F.Supp.2d at 1350 (quotation omitted).

If a court analyzing fraudulent misjoinder concludes joinder was improper under Rule 20(a), it must next determine whether the misjoinder was egregious. "[T]he distinction between misjoinder and 'egregious' fraudulent misjoinder is not well-defined." *Estate of Carter by & through Carter v. SSC Selma Operating Co. LLC*, 2:19-cv-00431-JB-M, 2020 WL 3429040, *3 (S.D. Ala. June 23, 2020). Whether misjoinder is egregious will depend on the degree of connection, or lack thereof, between the non-diverse party and the controversy. In an egregious misjoinder, "there is such a lack of connection between the claims that…it is clearly or obviously" misjoined. *Luke*, 2014 WL 1153786 at *2.

The Eleventh Circuit first recognized the concept of egregious misjoinder in *Tapscott*, 77 F.3d 1353. The plaintiffs in that case filed two types of class action claims in the same state court suit against two sets of defendants, one alleging violations

arising from service contracts in connection with the sale of cars, and the other alleging the same violations in connection with the sale of retail products. *Id.* at 1355. The automobile claims contained non-diverse defendants. *Id.* at 1360 n.16. The plaintiffs unsuccessfully contended in the district court that the allegations of a common business practice subjected all defendants to joinder. *Id.* at 1360. The Eleventh Circuit disagreed. It highlighted that the only similarity between the two sets of claims was that they alleged violations of the same Alabama statute, and the claims lacked any allegation of joint liability or conspiracy between the defendants. *Id.* Because the resident defendants had "no real connection with the controversy" involving the other claims, the joinder was so egregious as to constitute fraudulent joinder. *Id.*

Likewise, in *M.W. v. Ford Motor Co.*, 8:14-cv-3132-SCB-TBM, 2015 WL 1311029, *1 (M.D. Fla. Mar. 24, 2015) (Bucklew, J.), the plaintiff initially brought product liability and negligence claims against Ford and Enterprise based on an injury that occurred during a car rental. She then amended the state court complaint to join additional, non-diverse defendants whom she alleged committed medical malpractice while treating her for injuries she sustained during the same accident. *Id.* In concluding that the claims were fraudulently misjoined, the court highlighted "the circumstances of the [ ] case," including that the plaintiff offered no legitimate justification for amending the complaint to add the new claims, which did not involve any common questions of law or fact or assert joint, several or alternative liability between the defendants. *Id.* at *5. Rather, the malpractice claim had "no real connection" with the car rental controversy, and therefore constituted a fraudulent misjoinder. *Id.*

26

The *M.W.* court's emphasis on the particular circumstances of the case was echoed in *Spinnaker Cove Condo. Ass'n, Inc. v. Affordable Exterminating, Inc.*, 8:21-cv-2379-JLB-AEP, 2021 WL 5881677, *3 (M.D. Fla. Dec. 13, 2021), in which the court noted that it was "mindful of the case's procedural history" when doing the same. The plaintiff brought state court claims against a resident pest control company based on termite damage over the course of several years, and later added a non-resident insurance company to the suit based on a subsequent insurance contract. *Id.* Plaintiff had previously joined the same insurance company to a different state court suit, voluntarily dismissed those claims after it was removed, and then added the insurance company to the instant state court suit instead. *Id.* at *1 n.1, *3. In addition to the case's history, the court emphasized that the plaintiff neither opposed defendant's motion to sever and remand the original claims nor responded to defendant's contentions that it had acted in bad faith. *Id.* Accordingly, the court found that the lack of connection between the two sets of claims rendered the misjoinder fraudulent. *Id.*

The case's procedural history was also relevant in *Estate of Carter*, 2020 WL 3429040 at *6. The court held that a plaintiff's misjoinder of non-resident defendants was egregious where it only occurred after plaintiff's claims against the resident defendants had been submitted to binding arbitration. The court noted that the diverse defendants "should not be deprived of a federal forum due solely to Plaintiff's claims against non-diverse defendants which will not be litigated in a state court, or in any court." *Id.* Although the claims against all defendants alleged wrongful death and

medical liability for injuries caused to the decedent when he received treatment at or resided in their facilities, the court found that the factual allegations did not reveal any connection between the diverse and non-diverse defendants:

> The absence of a "logical relationship" between Plaintiff's claims is apparent. Defendants are unaffiliated. They provided categorically different services at unrelated facilities. The record is devoid of a temporal connection between the provision of Defendants' different services or of any connection between the injuries alleged to have been caused. There is no indication that Plaintiff's claims against the Defendants arise out of the same transaction or occurrence, or that the "same operative facts" will serve as the basis of claims. […] The Court discerns no degree, whatever, of any real connection between Plaintiff's claims against residential facility defendants for injuries sustained in 2016 and 2017 and claims against different and unaffiliated defendants who provided different services at unknown times. […] The record before this Court simply does not allow a finding of any relationship between Plaintiff's claims. Other than the statute under which they are brought and the type of injury alleged, Plaintiff's claims against the respective Defendants bear no degree of relationship to one another.

*Id.* at *5-6 (citations omitted); *see also Solar Eclipse Inv. Fund VII, LLC v. T-Mobile USA, Inc.*, No. 20-25257-CIV, 2021 WL 4085504, *10 (S.D. Fla. Feb. 16, 2021), *report and recommendation adopted by* No. 20-CV-25257, 2021 WL 3507715 (S.D. Fla. Aug. 10, 2021) (finding fraudulent misjoinder of two sets of claims brought by plaintiffs, who were investors in a Ponzi scheme involving solar power generators; although both claims alleged defendants' complicity in the scheme, their respective associations with the Ponzi company involved separate contracts of different types, in different states, during different time periods, with no affiliation between the defendants themselves).

In contrast, courts have found that a misjoinder is not egregious where there is some factual nexus between the claims, whether or not it rises to a level that would comply with Rule 20(a).  In *In re Trasylol Prod. Liab. Litig.*, 754 F. Supp. 2d 1331, 1337 (S.D. Fla. 2010), for example—a rare case involving allegedly misjoined plaintiffs— the court granted a motion to remand upon its finding that there was a "factual nexus" between the claims of different plaintiffs who were all harmed by taking the same drug manufactured by the same defendants, even though they all resided in different states and took the drug at different times.  Similarly, in *Estate of Brockel by & through Brockel v. Purdue Pharma L.P.*, No. CV 17-00521-KD-MU, 2018 WL 3113912 (S.D. Ala. Feb. 27, 2018), the court disregarded the differences between the roles of the defendants in an action alleging the negligent prescribing, manufacturing, marketing, selling, or distribution of opioids that the plaintiff claimed resulted in the decedent's suicide.  The court emphasized that most of the claims were brought against all the defendants together, and they all arose from the same "common nucleus of facts": the defendants were all alleged to be "link[s] in an opioid chain" that were "inextricably connected to" each other. *Id.* at *6; *see also Black v. Cable News Network, Inc.*, 9:16-CV-80412, 2016 WL 4443622, *3 (S.D. Fla. July 19, 2016) (defamation claims against two defendants were not fraudulently joined, although they were based on different statements made on different occasions to different parties, where they were closely connected in subject matter, time, and source; the court also noted that a common question existed because the veracity of the statements' common subject matter would need to be resolved in each claim).

Courts declining to find fraudulent misjoinder often emphasize that they are not endorsing the joinder.  In *Luke*, 2014 WL 1153786 at *3, the court noted that the joinder was not necessarily proper under Rule 20, but found that it was not obvious that the claims, though distinct and different, did not involve some common issues of law and fact.  All claims arose from the same event, the negligent spilling of hot cooking grease on plaintiff. *Id.*  The court concluded that the facts surrounding how the accident occurred could be relevant to all the claims, including those against the alleged perpetrator, the property owners, or even the insurance company that allegedly made false statements during the claim investigation. *Id.*  In *Campbell v. Quixtar, Inc.*, No. CIVA208CV0045-RWS, 2008 WL 2477454, *7 (N.D. Ga. June 16, 2008), another case alleging misjoinder of plaintiffs, the court found dispositive the fact that it could not "say with certainty that Plaintiffs' claims do not arise out of the same series of transactions."  All plaintiffs, including the non-diverse party, were distributors who previously contracted with the defendant pursuant to identical contracts and now sought to compete with the defendant by contracting with the same competitor. *Id.*  In the lawsuit, they all sought the same declaratory relief regarding the enforceability of their old contracts' non-compete provision. *Id.*  Although "[r]easonable minds could differ on the question of whether [the non-diverse plaintiff's] claims arise from the same series of transactions as the other Plaintiffs' claims," the court concluded the defendant had not met its burden of providing that the joinder was fraudulent. *Id.* at 8.

### 2)  *The Resident Plaintiffs Were Not Fraudulently Joined*

In their Motion to Remand, Plaintiffs argue that Defendant has failed to meet its burden of establishing by clear and convincing evidence that there is no possibility that the two non-diverse plaintiffs, Henning and Berger, can establish a cause of action against Ringling. Doc. 20 at 17-22.  However, Defendant clarifies in response that its fraudulent joinder argument is based on the doctrine of fraudulent *mis*joinder. Doc. 24 at 12.[7]  Defendant contends that the lead Plaintiff, Ruiz, misjoined all other Plaintiffs, including Henning and Berger, in order to prevent removal based on diversity jurisdiction. *Id.*  Cross-referencing its Motion to Sever and Dismiss (Doc. 17), it asserts that none of the Plaintiffs' claims arise out of the same transaction, occurrence, or

---

[7] Although Defendant "maintains that Plaintiffs cannot establish a cause of action against Ringling for numerous reasons detailed in its Motion to Sever and Dismiss Complaint (Doc. 17)," Defendant expressly chooses to rely on a theory of fraudulent misjoinder instead of the type of fraudulent joinder in which there is no possibility the resident plaintiffs can establish a cause of action against the defendant. Doc. 24 at 12; *see also* Doc. 1 at 25-37.  To the extent Defendant intends to incorporate the arguments in its Motion to Sever and Dismiss into its response in opposition to the Motion to Remand, the Court notes it has not sought leave from the Court to do so or to exceed the page limitations of Local Rule 3.01(b).  In any event, the arguments in its Motion to Sever and Dismiss are made under the Federal Rules of Civil Procedure, not the doctrine of fraudulent joinder, which is subject to a different standard. *See, e.g.*, *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) ("When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. If there is even a possibility that a state court would find that the complaint states a  cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.") (quotations and citations omitted); *Carl's Furniture, Inc. v. APJL Consulting, LLC*, No. 15-60023-CIV, 2015 WL 1467726, *5 (S.D. Fla. Mar. 30, 2015) ("[F]ederal courts have remanded cases in situations where it is unclear whether the claims against the purportedly fraudulently joined party would survive a motion to dismiss filed in state court. … All Plaintiff need demonstrate is that its claim against the Melendez Defendants has some legal basis and is not strictly a tactical tool to defeat removal.").  The Court will consider only the theory of fraudulent joinder on which Defendant expressly relies.

series of transactions or occurrences as that of the lead Plaintiff, Ruiz, and that no questions of law or fact exist that are common to all Plaintiffs. Doc. 24 at 12-16. Disputing Plaintiffs' assertion that a common question of law exists as to a statute of limitations defense, Doc. 17 at 11, Defendant points out that the defense is only relevant to a few of the Plaintiffs—and not Ruiz—which means it should not be considered for the purpose of joinder. Doc. 24 at 16.  Defendant argues that the factual allegations are "wholly disconnected," to the point where the misjoinder is egregious. *Id.* at 16-17.  Plaintiffs did not seek leave to reply to address Defendant's fraudulent misjoinder argument.

The Court first notes that Defendant's arguments in its opposition to the Motion to Remand that address whether any Plaintiffs, including Henning and Berger, are properly joined to the lead Plaintiff, Ruiz, reflect a misunderstanding of the current inquiry. *See id.*; *see also* Doc. 1 at 32-36.  The first question this Court must determine is whether it has subject matter jurisdiction.  And jurisdiction depends only on whether the Court can disregard the citizenship of Henning and Berger.  Therefore, the only relevant question at this stage is whether Henning and Berger are proper parties in the case—not whether any of the Plaintiffs should have been joined to Ruiz's claim.  The latter is a question that will be only addressed should this Court determine that it has jurisdiction, at which time the Court may consider Defendant's Motion to Sever. *See* Doc. 17.  Although the arguments in Defendant's Notice of Removal are more focused on Henning and Berger, they largely consist of contrasting Henning's factual allegations *with* Berger's. Doc. 1 at 32-36.  Again, however, the Court must determine

whether either of them is properly joined to the action itself. Specifically, in order to find that there is complete diversity, the Court must conclude that both Henning and Berger are fraudulently joined to the case. This means that if either of them is *not* fraudulently joined with respect to any of the counts they allege, then they are a proper party to the case for jurisdictional purposes. In that event, the Court cannot disregard their citizenship and must find that diversity jurisdiction does not exist.

Berger is involved in Counts I, VII, VIII, and IX of the complaint. Henning is involved in Counts II, V, VIII, and IX. As Defendant notes, Doc. 1 at 35, Counts II, V, and VII are "standalone," meaning Henning or Berger is the only plaintiff to allege them. (So, too, are Counts III and VI, each of which is alleged by a non-resident plaintiff.) Counts I, VIII, and IX, however, are alleged jointly between non-residents and Henning and/or Berger. The Court will therefore begin its analysis with these counts in order to determine whether Berger or Henning is fraudulently joined to them. As to each count, the Court will only consider whether Berger or Henning was fraudulently joined, not whether the joinder of all Plaintiffs involved in that count complies with Rule 20(a).

In Count I, Berger joins Lyra Wilson, Zinsser, Bonner, and Patterson in alleging that Defendant committed constructive fraud by misrepresenting the safety of campus and failing to report their claims of student-on-student misconduct. Doc. 11-1 ¶¶ 194-201. This count centers around the allegation that Defendant failed to properly disclose truthful information about its campus safety, and that Plaintiffs were injured when they acted in reliance on Defendant's misrepresentations. *Id.* ¶¶ 195-198. The

constructive fraud was exacerbated when Defendant's employees acted to prevent Plaintiffs from reporting incidents that occurred against them, further injuring them. *Id.* ¶¶ 199-201.  Lyra Wilson, Zinsser, and Bonner each allege that they were the victim of sexual assault in 2009, 2013, and 2016, respectively; Patterson alleges he was the victim of stalking in or around 2008. *Id.* ¶¶ 75-89, 135-154, 155-167, 180-190.  All of them contend that Shaffer acted improperly or abusively when they attempted to report the crimes. *Id.*  Berger, on the other hand, does not allege that he was the victim of a crime.  Rather, he explains that he is disabled by a mental health disorder, and recounts a 2018 incident in which Shaffer verbally abused him for calling a suicide hotline. *Id.* ¶¶ 168-179.

The only common element the Count I Plaintiffs' allegations share is that Shaffer acted abusively toward students who were seeking help.  However, Berger's situation is factually distinct from the others' situations.  His experience does not relate to the safety of campus, the failure to report an instance of student-on-student misconduct, or an attempt to discourage students from reporting such incidents.  A claim that Ringling misrepresented its safety is not relevant to Berger's factual allegations, rendering his inclusion in a constructive fraud count unclear.  Moreover, his experience, like that of all the Count I Plaintiffs, is temporally distinct from the others.  There could be no common evidence or legal theories that would tie Berger's factual allegations to the others in Count I, because they lack not only a logical relationship to the other Count I allegations, but any real connection to them.  *See*

*Tapscott*, 77 F.3d at 1360.  The Court concludes that Berger's joinder in this count not only constitutes misjoinder, but is so unrelated as to be egregious.

Count VIII is brought by every Plaintiff except Ruiz, including Berger and Henning.  It alleges a breach of implied contract based on Defendant's failure to abide by its own policies, which Plaintiffs contend are an implied contract. Doc. 11-1 ¶¶ 260-266.  The policies include Defendant's core values of respecting diversity and equity, its promise to provide a supportive, caring environment, and its prohibition of discrimination against students who are members of a protected class. *Id.* ¶ 262. Plaintiffs allege the policies were breached by Shaffer's and other employees' discrimination, mishandling of reports of student-on-student misconduct, and transmission of students' private information. *Id.* ¶ 263.  Defendant was not only aware of its employees' policy breaches, but worked to cover them up. *Id.* ¶¶ 264-265.

The Count VIII Plaintiffs' individual allegations underlying the alleged breach of contract vary significantly.  As discussed with respect to Count I, four students allege that they were victims of student-on-student misconduct that was mishandled in 2008, 2009, 2013, and 2016.  Patterson also alleges that Shaffer and other Ringling employees discriminated against him based on his sexual orientation in 2009 and 2011. The other three students allege discrimination or mistreatment in relation to a disability.  Henning alleges disability discrimination through Shaffer's and other employees' failure to offer her a reasonable accommodation in 2020 in the context of her employment. *Id.* ¶¶ 110-134.  Reading Berger's allegations broadly, he appears to contend that Shaffer's response to his 2018 suicide attempt constituted disability

discrimination. *See id.* ¶¶ 176-178.  Laura Wilson also appears to allege that she was discriminated against because of her disability in 2018, based on verbally abusive treatment by Shaffer as well as mishandling of a roommate dispute and the termination of her employment.  Berger and Henning additionally allege that Shaffer shared their private medical information. *Id.* ¶¶ 127, 176.

None of the incidents described in the Count VIII Plaintiff's individual allegations are directly connected to each other.  The incidents themselves do not share any operative facts, and there are no common facts with respect to any specific breach or injury.  On the other hand, there is a common question among all Plaintiffs as to whether an implied contract was formed between Ringling and its students.  Further, unlike with Count I, the factual allegations by the non-diverse Count VIII plaintiffs do not stand out from those of the others.  Four out of the seven claims, including Berger's and Henning's, relate to discrimination based on their membership in a protected class.  Berger, Henning, and Laura Wilson each allege disability-based mistreatment; both Henning's and Wilson's occurred in the context of their employment as a residential advisor.  Although many Plaintiffs' claims are temporally separate, the three disability-related incidents occurred either two years apart or during the same year; all three involved allegedly-discriminatory conduct by the same perpetrator.  In this regard the disability claims resemble *In re Trasylol*, 754 F. Supp. 2d at 1337, where the court found a factual nexus between the claims of plaintiffs who were all harmed at different times, places, and manner by the same underlying cause.  Because of the distinctions between the disability-based claims and those of the victims of student-on-student misconduct,

it is unlikely that joinder of the two types within the same count is proper under Rule 20(a).  However, mere misjoinder is not fraudulent joinder. *See Tapscott*, 77 F.3d at 1360; *Luke*, 2014 WL 1153786 at *3.  Viewing the allegations in the light most favorable to the Plaintiffs, the Court cannot say there is no nexus that connects Berger's and Henning's factual allegations to those of their non-resident co-Plaintiffs. *See Estate of Brockel*, 2018 WL 3113912 at *6.  Within the context of this count, the Court does not find that Berger's or Henning's claim is so unrelated to the others' that it was the result of fraudulent misjoinder.

The Court makes the same finding with respect to Count IX, in which the same set of Plaintiffs as in Count VIII allege a breach of fiduciary duty for the failure to protect them from danger and discrimination. Doc. 11-1 ¶¶ 267-283.  The individual Plaintiffs' factual allegations for this claim are the same as Count VIII.  For the same reasons, then, the Court concludes that the joinder of Henning and Berger to this count is not so egregious as to be fraudulent.

In reaching this conclusion, the Court takes into consideration the fact that the circumstances and procedural history of this action do not contain any indications of fraudulent intent. *Cf. Estate of Carter*, 2020 WL 3429040 at *6; *M.W.*, 2015 WL 1311029 at *5; *Spinnaker Cove*, 2021 WL 5881677 at *3.  For example, Plaintiffs did not amend their complaint in order to add non-diverse parties.  Moreover, the fact that Henning and Berger are joined to some of the same counts as the other Plaintiffs stands in contrast to the majority of cases finding fraudulent misjoinder, which involve a separate set of defendants against whom the plaintiffs allege an entirely different set of

claims. *See*, *e.g.*, *Tapscott*, 77 F.3d at 1360; *Estate of Carter*, 2020 WL 3429040 at *6; *Solar Eclipse*, 2021 WL 4085504 at *10.

As noted *supra*, Defendant's assertion that the claims of all Plaintiffs are misjoined under Rule 20 is beyond the reach of a jurisdictional inquiry. However, this possibility cuts against a finding that Henning and Berger were only joined in order to defeat diversity jurisdiction—rather, it signals that any misjoinder may simply result from inartful pleading. The Court also observes that Florida's rule of joinder is extremely permissive, allowing the joinder of any plaintiffs who "hav[e] a united interest." Fla. R.C.P. 1.210(a); *see also Razorback*, 2010 WL 11575268 at *7 (describing Florida's rule of joinder as "extremely broad and permissive"). Although the Court has applied the federal rule to its fraudulent misjoinder analysis, *see supra* n.6, the fact that the Plaintiffs' claims are more likely to be properly joined in the court in which they were filed further weakens Defendant's assertion that the non-diverse plaintiffs were added solely for the purpose of defeating diversity. In all, the circumstances of the case demonstrate that Defendant has not met its burden of demonstrating by clear and convincing evidence that the joinder of Henning and Berger to Counts VIII and IX was fraudulent.

Because the Court concludes that the non-diverse Plaintiffs, Henning and Berger, are not fraudulently joined to Counts VIII and IX, it cannot ignore their citizenship for the purpose of diversity jurisdiction. Accordingly, it need not consider whether the other counts that they assert individually, Counts II, V, and VII, are fraudulently misjoined to the case. Diversity of citizenship is not present in this action.

### C. Attorney's Fees

Plaintiffs request an award of attorney's fees and costs incurred as a result of the removal, asserting that Defendant lacked an objectively reasonable basis to remove the action. Doc. 20 at 21-22.  The Court disagrees.  As Defendant points out, an award of attorney's fees is not automatic upon remand. Doc. 24 at 18, citing *Myakka River Resort, LLC v. City of North Port*, 469 F.Supp.3d 1323, 1329 (M.D. Fla. 2020) (Honeywell, J.). Rather, courts typically exercise their discretion to award attorney's fees only when a remand attempt lacks an arguable rationale. In *In re Trasylol*, 754 F.Supp.2d at 1338, for example, the court granted the motion to remand but denied the request for attorney's fees and costs, because "existing case law made it at least arguably rational for the Defendants to remove the case based on the theory of fraudulent misjoinder, which has some support in the law."  Here, too, the Court concludes that Defendant's removal attempt, though unsuccessful, was neither frivolous nor objectively unreasonable.  In its discretion, the Court finds that an award of attorney's fees and costs is not appropriate.

### IV.   CONCLUSION

Neither federal question jurisdiction nor diversity jurisdiction exists in this action.  Plaintiff's Motion for Remand is due to be granted in part.

Accordingly, it is **ORDERED**:

1. Plaintiff Megan Ruiz *et al.*'s Motion for Remand (Doc. 20) is **GRANTED in part**.  This action is **REMANDED** to the Twelfth Judicial Circuit in and

for Sarasota County, Florida.  Plaintiffs' request for attorney's fees and costs

is **DENIED**.

2. The Clerk is directed to send a certified copy of this Order to the Clerk of

Court for the Twelfth Judicial Circuit in and for Sarasota County, Florida.

3. The Clerk is further directed to terminate all pending motions and **CLOSE**

this case.

**DONE** and **ORDERED** in Tampa, Florida on February 17, 2023.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties